# BARKER, ADMINISTRATRIX, *v.* CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY.

[No. 7,637. Filed June 25, 1912. Rehearing denied December 19, 1912.]

1. TRIAL.—*Verdict.*—*Right to Direct.*—The right to direct a verdict can only be upheld, where all the evidence most favorable to plaintiff, together with all the reasonable and legitimate inferences which a jury might have drawn therefrom, is clearly insufficient to establish one or more facts essential to plaintiff's cause of action. p. 671.

2. MASTER AND SERVANT.—*Machinery and Appliances.*—*Duty to Inspect.*—*Acts of Fellow Servant.*—While the master is bound to inspect machinery and appliances with which his servants work, in order to keep the same in good repair, he is not bound to inspect in order to protect servants from dangers arising from the acts of fellow servants in the operation of machines and appliances that are in good condition. p. 672.

3. MASTER AND SERVANT.—*Injury to Servant.*—*Negligence of Fellow Servant.*—There can be no recovery for the negligence of a fellow servant. p. 672.

4. MASTER AND SERVANT.—*Railroads.*—*Injury to Servant.*—*Negligence.*—*Special Order to Exceed Speed Rate Provided in Rules.*— No liability for the death of an engineer in charge of its train can be imputed to a railroad company from the fact that its train was being run by its special order in excess of the rate of speed provided by its rules. p. 672.

5. MASTER AND SERVANT.—*Railroads.*—*Injury to Servant.*—*Failure to Place Switch Light.*—*Evidence.*—There can be no recovery

against a railroad company for injury to its engineer, on a charge of negligence in failing to place a light on a switch stand as required by §5256 Burns 1908, Acts 1901 p. 160, in the absence of evidence that the day was dark and foggy. p. 673.

6. MASTER AND SERVANT.—*Railroads.—Injury to Servant.—Negligence of Person in Charge of Signal.—Complaint.*—A complaint against a railroad company for injury to an engineer in running into an open switch, alleging that defendant, through its station agent, neglected to look after or inspect the switch and to discover its open condition before the arrival of the train, and negligently permitted the train to pass into the open switch without informing the engineer and signalling him to stop, sufficiently charges negligence under §8017 Burns 1908, Acts 1893 p. 294, providing that every railroad company shall be liable for damages for personal injuries to its employes, caused by the negligence of any person in its service who has charge of any signal, telegraph office, etc. p. 673.

7. MASTER AND SERVANT.—*Railroads.—Injury to Servant.—Evidence.—Question for Jury.*—In an action against a railroad company for the death of an engineer caused by running his train into an open switch, where the evidence showed that some three hours before the injury section men were sweeping snow from the frogs of the switch, and no one was seen about the switch from that time to the moment of the accident, that by the rules of the defendant it was the duty of its station agent to stop the train when the switch was open, that the station agent was busy and did not notice the switch, that when the train was a half mile away such agent looked down the track, and, not noticing the open condition of the switch, set the semaphore from the "caution" position to the "clear" position, and that the train was running at thirty miles an hour, the question of defendant's liability under §8017 Burns 1908, Acts 1893 p. 294, providing that a railroad company shall be liable for personal injuries to its employes, caused by the negligence of any person in its service who has charge of any signal, telegraph office, etc., should have been submitted to the jury. pp. 673, 676.

8. EVIDENCE.—*Inferences.—Continuance of Condition.—Jury Question.*—Whether it is a reasonable inference that a switch was open some thirty or sixty seconds prior to an accident, because it was open at the time of the accident, is a proper matter for determination by the jury. p. 676.

From Monroe Circuit Court; *James B. Wilson,* Judge.

Action by Dolly M. Barker, administratrix of the estate of Albert S. Barker, deceased, against the Chicago, Indiana-

polis & Louisville Railway Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Charles E. Thompson, Homer Elliott* and *Robert G. Miller,* for appellant.

*E. C. Field, R. H. East, J. E. Henley* and *H. R. Kurrie,* for appellee.

Ibach, J.—Upon a former appeal of this case, reported as *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, 83 N. E. 369, 17 L. R. A. (N. S.) 542, 14 Ann. Cas. 375, the Supreme Court held the complaint insufficient. The complaint was amended, and the cause again proceeded to trial. At the close of plaintiff's evidence, defendant moved the court to instruct the jury to return a verdict for defendant on the evidence submitted by plaintiff, which motion the court sustained, plaintiff excepting. Error is assigned and argued in sustaining this motion, and in overruling plaintiff's motion for a new trial.

"It is a settled rule in this State that the right of the court to direct a verdict, as it did in this case, can only be upheld where, after a consideration of all the evidence 1. most favorable to the plaintiff, together with all the reasonable and legitimate inferences which a jury might have drawn therefrom, it can be said that the evidence is clearly insufficient to establish one or more facts essential to the plaintiff's cause of action." *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 425, 73 N. E. 899. See, also, *Compton* v. *Benham* (1909), 44 Ind. App. 51, 85 N. E. 365. "It is only when the plaintiff fails to make a case, so that it would be the duty of the trial court or of a higher court on appeal to set aside the verdict as not being supported by any competent evidence on some material point, that a verdict for the defendant should be directed." *Diezi* v. *G. H. Hammond Co.* (1911), 156 Ind. 583, 60 N. E. 353. See, also, *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385, 14 N. E. 228; *Wolfe* v. *McMillan* (1889), 177 Ind. 587, 20 N. E. 509.

The main facts of the case are sufficiently set out in the opinion on the former appeal. The first paragraph of amended complaint charges negligence of defendant (1) in failing to inspect its roadbed and switch at Quincy before the arrival of the train on which Barker was working as engineer, to the end that he might have a safe place in which to perform his duties, (2) in failing to place a light on the switch stand, (3) in leaving the switch open for three hours before the arrival of Barker's train, without notice to him, his train at the time being run over the track of defendant at thirty miles an hour, by special order, in violation of the rules of the company which did not permit the running of a freight train at a speed in excess of twenty miles an hour.

The first ground of negligence charged is insufficient. There is no charge that the switch was defective or out of repair. The master is bound to inspect in order to

2. keep in good repair machinery and appliances with which his servants work. He is not bound to inspect in order to protect servants from dangers arising from the acts of fellow servants in the operation of machines and appliances themselves in good condition. Likewise the

3. third ground of negligence is insufficient, since negligence in leaving the switch open was that of a fellow servant, for which there could be no recovery. Both points were decided in the former appeal. No liability to decedent can be imputed to defendant, from the fact that it

4. was running its train at thirty miles an hour by special order, though its rules, printed for the guidance of employes, specified that freight trains should be run no faster than twenty miles an hour, for such a rule is solely for the guidance of operatives in running trains, may be changed by the company, and was changed in this case by special order.

The only actionable charge of negligence in the first paragraph of complaint is the second, and this is supported by no evidence. The complaint charges that the weather was

dark and foggy, and the statute (Acts 1901 p. 160,
5.   §5256 Burns 1908) only requires a light in the day-
time when the day is dark and foggy.   There is no
evidence that the day was dark and foggy.

The acts of negligence charged in the second paragraph
of complaint, on which appellant claims to have introduced
evidence sufficient to take the case to the jury, are
6.   that defendant, through Orrell, its station agent at
Quincy, (1) neglected to look after or to inspect the
switch before the arrival of Barker's train, and to discover
its open condition, (2) carelessly and negligently suffered
and permitted the engine and train to pass into the open
switch without knowledge to Barker, and without inspection
of the way, (3) neglected by use of the semaphore, to in-
form Barker and his colaborers on the train to stop.   The
third paragraph of complaint is mainly a repetition of the
other two.

It is provided by §8017 Burns 1908, Acts 1893 p. 294,
"that every railroad or other corporation, except municipal,
operating in this state, shall be liable for damages for per-
sonal injuries suffered by any employe while in its service,
the employe so injured being in the exercise of due care and
diligence, in the following cases:   *   *   *   Fourth: Where
such injury was caused by the negligence of any person in
the service of such corporation who has charge of any signal,
telegraph office," etc.   The second paragraph of complaint
charges negligence under this fourth clause of §8017, *supra.*

In order to show that it was a duty of Orrell to inspect the
switch, and to give warning of its condition to Barker, by
virtue of his employment, appellant introduced the
7.   following rules of defendant in evidence: "171. When
offices are so located that a view can be obtained of
the track, operators will look out before trains approach,
and see that the track is clear and the switches properly
set." "271.   They [station agents] will have charge of the

company's books, papers, buildings, sidings and grounds, and will be held responsible for the safety and care of all property intrusted to the company in the transaction of its business and for the deportment of employes at their stations." "159a. The semaphore signal being erected at telegraph offices is a three-position signal and is to be used as a train order signal, also to stop trains at such points for *instructions other than train orders when occasion requires.*" (Our italics.)

Orrell was the station agent, telegraph operator and dispatcher at Quincy. His station had a window so that he could look out and see the track, and the switch was in view from his window. He testified that he did not look down the track until the train was about half a mile away, that he did not see the switch signal, but looked by, over or past it, he being in a hurry and having other business to attend to, and that he pulled the semaphore from the "caution" position to the "clear" position. The station was situated in a valley, the tracks sloping toward it from both directions. Appellee contends that there is no evidence to show that the switch was open for any appreciable time before the wreck long enough for Orrell to have discovered it. It is true that this condition is not shown by direct evidence, but it is shown that some section men were sweeping snow from the frogs of the switch some three hours before, and no one was seen about the place from this time up to the moment of the accident. That the train ran into the switch is evidence that it was open at the time the accident occurred, and since the train was running about thirty miles an hour, and Orrell testified that he looked down the track when it was half a mile away, it must have run into the open switch about half a minute after he looked. It may reasonably be inferred that the section men who swept out the frogs left the switch open. It having been shown that it was open approximately thirty seconds after Orrell looked, and that after the accident it was open and the switch signal set to show an open

switch, it seems to us that all the reasonable inferences of fact which can be drawn from this situation are that the switch was open when Orrell looked down the track, and that he should have noticed the switch signal so indicating, as it was his duty to look for it under the company's rules, and should have set the semaphore to warn the approaching train, instead of setting it for a clear track. His testimony that he did not see the open switch before the accident is no evidence that it was not open. He says that he was busy about the station that morning and did not notice the switch, that when the train was about half a mile away he looked down the track and did not see that the switch was open, that he did not look at the switch signal for the purpose of seeing if it was red, he looked over it or by it, but not directly at it. Taking his evidence in its entirety and considering it fully, if the switch had been open during the entire morning he would not have seen it, because, although the company's rules made it a part of his duty, he did not look at the switch. It may be conceded to appellee that the ordinary use of the semaphore was not to stop a train because a switch was set wrong, yet appellee's rules contain provisions under which it can be said that Orrell's duty would be to stop the train when the switch was open, and that he should have used the semaphore for this purpose, or at least to cause the train to move slowly and with caution. At the very least, it appears from the evidence that it was Orrell's duty to see that the switches were properly set and the track clear before permitting trains to pass, and that he was negligent in the performance of this important duty. He admits his negligence in failing to look at the switch signal, and we think every inference and presumption is that if he had looked he would have found it open, and that plaintiff has produced evidence tending to show constructive notice to Orrell of the open condition of the switch in time for him to have warned decedent, which should have gone to the jury, and from which evidence it might have found defendant

liable under §8017, *supra*. See *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 87 N. E. 723.

"The general principle that a prior or subsequent existence is evidential of a later or earlier one has been repeatedly laid down, and has even been spoken of as a Presumption." 1 Wigmore, Evidence §437, and note; 4 Wigmore, Evidence §2530; Wigmore, Pocket Code, §341.

"To prove the existence of a fact or of a continuous state of things at a given time, is often, in itself, practically impossible. The most which can be done is to show its existence at a previous or subsequent period and ask the tribunal to draw from this proof an inference that it existed at the time in question. * * * The established rule is that the court will infer that a particular fact or set of facts continues to exist as long as such facts usually, as a matter of experience, have been found to exist." 2 Chamberlayne, Modern Law of Ev. §1030.

We do not hold that there is an inference of negligence from the fact that an accident occurred, but we do hold whether or not it is a reasonable inference that because a switch was open at the time of an accident it was open some thirty or sixty seconds before, is a proper matter for the determination of the jury.

The fact that the section men were employed at work about this particular switch early in the day in sweeping the snow away from it, the further fact that the evidence does not disclose that any other persons were present about it after that time until after the accident, coupled with the further fact that the train ran into the switch, are all matters on which the jury should have had an opportunity to express its judgment as to whether the switch was open at the time Orrell looked down the track. It was the province of the jury to say whether, from the rules of the company, it was his duty to warn decedent by setting the semaphore, and, after drawing from all the facts such reasonable inferences as could legitimately have

been drawn therefrom, to say whether his failure so to do was the proximate cause of decedent's death. We do not hold that the facts disclosed by the record show that the switch was open for any fixed or definite period of time before decedent's engine ran into the same. It is not necessary for us in the determination of this question so to find. What we do decide is that there is some competent evidence in the record on which the jury had the right, under proper instructions, to express its opinion, and it follows that the court erred in sustaining defendant's motion to direct a verdict and in overruling plaintiff's motion for a new trial.

The judgment is reversed, and the cause remanded for new trial.

NOTE.—Reported in 99 N. E. 135. See, also, under (1) 38 Cyc. 1576; (2) 26 Cyc. 1136; (3) 26 Cyc. 1276; (5) 26 Cyc. 1149; (6) 26 Cyc. 1395; (7) 26 Cyc. 1477; (8) 38 Cyc. 1539. As to the liability of an employer to his employes for defective machinery and appliances, see note to *Brazil Block Coal Co.* v. *Gibson* (Ind.), 98 Am. St. 289. As to the doctrine of assumption of risk and contributory negligence in the law of master and servant, see 97 Am. St. 884. Duty of master to keep switch closed as a delegable one, see 17 L. R. A. (N. S.) 542. Servants belonging to regular train crew and switchmen as fellow servants, see 50 L. R. A. 434.