## SPUND v. MYERS.

United States Court of Appeals for the District of Columbia.

Decided March 29, 1937.

381.

Walter C. Clephane, J. Wilmer Latimer, and Gilbert L. Hall, all of Washington, D. C., for appellant.

A. Henry Walter, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment of the lower court in favor of appellee as administratrix of the estate of Virginia Pflieger, deceased, for damages because of the death of the decedent alleged to have been caused by the negligence of appellant.

The declaration charged that on December 20, 1933, appellant, hereinafter called defendant, was operating his automobile on Connecticut avenue in Washington, D. C., in a negligent manner in the following particulars among others, to wit, without maintaining a proper lookout for pedestrians, and without having his automobile under control and that, as a result of the negligence alleged, his automobile collided with plaintiff's intestate and so injured her that she subsequently died.

The defendant by his plea admitted that he was operating his automobile at the time and place alleged, but denied that he collided with the deceased, and denied that he was guilty of any of the acts of negligence charged in the declaration.

It appears from the evidence that the injury to the deceased occurred between 8 and 9 o'clock p. m. on December 20, 1933; that deceased was standing in or crossing Connecticut avenue between street intersections about at the middle of the block between Porter and Rodman streets; that the defendant, who operated a market store on the east side of Connecticut avenue about a block south of Porter street, and about a block and a half from the scene of the accident, was driving north on Connecticut avenue in the direction of his home, after having closed his store at about 8 p. m.

The defendant testified that as he drove along the avenue he saw an object lying about thirty feet ahead of him at or near the east rail of the northbound railway track, and a little to his right; that he quickly turned his car sharply to the left, that is from east to west, to avoid striking the object and opened his right door the better to see what the object was; that finding it was a woman, and not having sufficient space to complete a turn to the left to park his car on the west side, he turned shortly to the right and then made a U-turn to the west side of the avenue, where he brought his car to a stop about opposite the point where the injured woman was lying; that he then went to her assistance and carried her to the car of a Mr. Hawes, who had stopped beside the defendant's car; that defendant thereupon lifted the woman into the rear seat of Hawes' car and held her in his arms until they reached Emergency Hospital. The injured woman died a few days later without having regained consciousness. The defendant denied that his car collided with the deceased.

It appears that it had been raining prior to this time and that the avenue was wet; that the place where the body was lying was a point between street crossings at about the middle of the square; that no witness testified to having seen the deceased struck by defendant's car, or by any other car.

At the time of the occurrence an automobile occupied by Daniel H. Kunkel and his wife was proceeding in the same direction with defendant's car and on the right side thereof, and near to the place where the body was lying. Mr. Kunkel testified that as he neared the place where the body was found Mr. Spund's car passed him on the left, and the witness then heard a thud and saw newspapers fluttering in the street to his left. Mrs. Kunkel testified that at this time she looked to the left through the windshield of their car and saw deceased standing in the street, that a car, which

later proved to be Mr. Spund's car, then passed upon their left, and after the car passed she did not see the figure standing in the street; that it seemed as if the figure had been "mowed down"; that the Kunkel car was then driven to the curb and stopped and both Mr. and Mrs. Kunkel alighted from their car, but were delayed in reaching the spot where the body was lying because of passing cars; that when they reached the place they found that the body of deceased was being taken to a car, which had stopped on the opposite side of the street to render assistance. They testified that the defendant's car was being driven at a moderate rate of speed at the time of the occurrence; that the night was dark; that it had been raining; and that the lights from passing cars were reflected from the wet surface of the street.

Mrs. Kunkel also testified that she saw Mr. Spund's car make the U-turn ahead of their car, and that his car then had "no lights on"; that she did not notice whether the car had lights on it when it passed to the side of them going north or not; that the first time she observed the absence of lights was when it made the U-turn in front of them; that it had no lights during the time it was making the turn nor when it was coming south to a stop on the opposite side of the avenue.

Mr. Kunkel testified that when the Spund car had made the U-turn and was coming south on the opposite side of the avenue the car was running without lights and came to a stop at a point approximately opposite the point where the body was lying in the street; that he did not observe whether or not the car when it passed him going north was without lights; that "under ordinary circumstances you would probably observe the reflection of the lights on a passing car but this night the streets were wet and you got all kinds of reflections from street lights or any other lights that might happen to be there; he couldn't say that the car that passed his did not have lights"; that when he first saw the car without lights it was coming to a stop on the opposite side of the avenue and Mr. Spund was alighting from it; that he has no knowledge as to how long the car had been without lights.

It was testified by Mr. Spund and two witnesses who were employees at his store that when Spund entered his car in front of his store on Connecticut avenue, a short distance south of the place of this occurrence, and proceeded northward, the front lights of the car were burning, and it is the testimony of Spund that they continued to burn at the time of the occurrence and while he was making the U-turn on the avenue, and when he stopped upon the west side of the avenue.

At the close of plaintiff's evidence and at the close of all the evidence at the trial, defendant moved for a directed verdict upon the ground that the evidence did not make a prima facie case upon the alleged fact that defendant's car collided with deceased, or upon the charges contained in the declaration that defendant had failed to maintain a proper lookout or had failed to have his automobile under proper control, as charged in the declaration.

These motions were overruled by the court subject to exceptions. The court thereupon submitted the case to the jury, which found a verdict in favor of the plaintiff; and the court entered judgment thereon. From this judgment the present appeal is prosecuted.

The defendant founded his appeal upon a claim that the lower court erred in submitting the issue of negligence to the jury. Appellant particularly denies that he failed to maintain a proper lookout when driving his car, or failed to have his automobile under proper control.

Appellant in his brief filed in this court stated that, while denying that his car struck the deceased, he is content nevertheless to rest his appeal upon the point that the court erred in submitting the issue of negligence to the jury; stating that:

"As indicated above, defendant's sole point is the entire absence of evidence upon the charges of negligence. Defendant's counsel assert with confidence that plaintiff can point the court to no evidence directly tending to prove either of the allegations of negligence submitted to the jury, and to no evidence of facts or circumstances from which it would be legally possible to infer defendant's guilt of either of such acts. * * *

"But it has been assumed for the purpose of this appeal, that there was evidence from which it might be inferred that deceased was standing in or crossing Connecticut Avenue, that it was defendant's car which passed to the left of the Kunkels' going north, and that defendant's car collided with deceased."

The appellee relies in this court upon the claim that there is substantial evidence

in the record to the effect that appellant was driving his car without lights at and before the time of the accident, and accordingly that he failed and was unable to keep a proper lookout for pedestrians at that time; that his negligence in this particular caused or contributed to the injury resulting in decedent's death.

We are of the opinion that while the evidence upon this issue is conflicting, it was sufficient to take the case to the jury.

The two employees of Mr. Spund, and Mr. Spund himself, testified that when he left his store going toward his home his lights were burning. On the other hand, it is the testimony of Mr. and Mrs. Kunkel, who were wholly disinterested witnesses, that immediately after the collision the lights upon the car were not burning.

The testimony of Mr. and Mrs. Kunkel that the lights were not burning immediately after the collision is competent to be considered together with the other testimony in the case as proof tending to show that the lights were not burning at the time of the collision. Barker v. Chicago, etc., Ry. Co., 51 Ind.App. 669, 99 N.E. 135, 138, in which it is said: " 'The general principle that a prior or subsequent existence is evidential of a later or earlier one has been repeatedly laid down, and has even been spoken of as a presumption.' Wigmore, Evidence, § 437, and note." Howland et al. v. Davis, 40 Mich. 545. This conclusion does not contradict our decision in Parlton v. United States, 64 App. D.C. 169, 75 F.(2d) 772, inasmuch as in that case the subsequent condition appeared about ten days after the alleged condition which was sought to be proven by it.

It is a well-understood rule that it is negligence to drive an automobile along a city street at night without the headlights burning.

In Harnau v. Haight, 189 Mich. 600, 155 N.W. 563, 567, it is said: "He [the driver] is required by law to have such lights as will show objects immediately in front of him, and he must have his machine under such control as not to overtake and run down people within the scope of his lights." In Giles v. Ternes, 93 Kan. 140, 143 P. 491, 493, it is said: "Appellant argues that the lights are only intended to warn those approaching the automobile so that they may avoid colliding with it. It is the duty of the motorist to keep a vigilant watch ahead for other vehicles, as well as for pedestrians, upon the highway, and the lights are required to enable him to see persons and vehicles on the highway in time to avoid them, as well as for the protection of those occupying the automobile." See, also, Lauson v. Fond du Lac, 141 Wis. 57, 123 N.W. 629, 135 Am.St.Rep. 30, 25 L.R.A.(N.S.) 40; 67 A.L.R. 104, 105.

It appears, therefore, that the lower court did not err in submitting to the jury the question of whether the defendant failed to keep a proper lookout while driving his car at the time of this collision. The decision of the lower court is therefore affirmed with costs.

Affirmed.