# Richmond

SYLVESTER T. HALL, ADMINISTRATOR D.B.N., ETC. v.
HERVEY S. HOCKADAY, ET AL.

RUTH OLSON SHAW v. HERVEY S. HOCKADAY, ET. AL.

January 17, 1966.

Record Nos. 6062, 6063.

Present, Eggleston, C.J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Emanuel Emroch* and *Robinson O. Everett* (*John A. Jamison; Emroch & Cowan; Everett, Everett & Everett,* on brief), for the plaintiffs in error.

*James Ashby, Jr.* and *Russell H. Roberts* (*Ashby & Roberts,* on brief), for the defendants in error.

I'ANSON, J., delivered the opinion of the court.

Ruth Olson Shaw filed a motion for judgment to recover damages from the defendants, Hervey S. Hockaday and Waite Lumber Company, Inc., for injuries suffered by her as the result of a collision between an automobile operated by her husband, David M. Shaw, in which she was a passenger, and a tractor-trailer owned by the corporate defendant and operated by its employee, Hockaday. Dr. Shaw died from the injuries received in the collision, and his administrator, Sylvester T. Hall, brought a separate action to recover for his wrongful death.

The two cases were consolidated for trial before a jury, and at the conclusion of all the evidence for the plaintiffs and defendants the trial court struck plaintiffs' evidence and entered summary judgment for the defendants.

Plaintiffs have assigned numerous errors but the controlling question before us is whether the court erred in striking plaintiffs' evidence and entering summary judgment for the defendants on the ground that no primary negligence was shown to exist on the part of the defendant Hockaday.

The collision occurred near Thornburg, Virginia, at about 8:45 P. M., on August 31, 1960, on U. S. route 1, a heavily traveled four-lane highway, divided in the center by two solid yellow lines, and running generally north and south. Dr. Shaw was operating his automobile south in the inside lane when it collided with the rear of the tractor-trailer operated by Hockaday, which he had stopped in the

inside, or passing, lane preparatory to making a left turn into a private driveway leading to his home.

Mrs. Shaw testified that she was asleep on the back seat of the automobile at the time of the accident and was awakened when thrown to the floor of the car by the collision. Within a very short time thereafter the Rev. Charles W. Beach appeared and flashed a light in her face. Although suffering great pain, she managed to get back on the seat and when she looked out she noticed that the car was turned slightly to the right, and that there were no lights, or reflections from lights, on the rear of the trailer.

The Rev. Charles W. Beach was traveling north on route 1 and was approximately four car-lengths north of the scene of the accident when he heard the noise of the crash. He slowed down his car, made a "U" turn, and returned to the scene where he administered first aid to Dr. and Mrs. Shaw. He was approximately "three feet" from the end of the trailer and saw the ends of logs, loaded lengthwise on the trailer, protruding over the hood of the Shaw automobile. He did not "observe" any lights burning on the rear of the trailer when he arrived on the scene, and did not "witness" the left-turn signal light being on and blinking.

The depositions of Dr. and Mrs. Ernest Campbell of Chapel Hill, N. C., were read to the jury. Mrs. Campbell testified that she and her husband left the Hot Shoppe Restaurant, located on U. S. route 1 at Fredericksburg, a little after 8:30 P.M.; that while she was driving south on highway 1 blinking lights from northbound traffic alerted her to trouble ahead, and when she arrived at the scene of the accident there were several parked vehicles and a truck driver was waving a flare or flashlight; that she drove past the scene of the accident in the outside lane and partly on the shoulder of the road, with her car in low gear, at a speed of 5 miles an hour or less; that there was glass on the highway and the shoulder of the road was very muddy; that "it was a very dark night, no moonlight at all"; that the doors of the wrecked automobile were not open, and "we had the impression that at the moment that it had just happened"; that she had a clear view of the windshield of the Shaw car and saw logs on the trailer, which were loaded lengthwise, extending through the windshield of the car on the driver's side; and that she saw lights from cars parked at the scene of the accident, but did not observe any lights or reflectors on the rear of the trailer. She drew a diagram showing the

positions of the vehicles involved in the accident and the ends of logs protruding through the windshield of the Shaw car.

Dr. Campbell testified that he was a passenger in the automobile operated by his wife; that he did not see an ambulance or police patrol car at the scene of the wreck; that he did not observe any lights or reflectors on the rear of the trailer as they crept by the scene at a speed of 2 to 4 miles per hour; that the logs were loaded lengthwise on the trailer and were held on by chains; and that some of the logs "were into the front part of the [Shaw] car." He also drew a diagram showing the trailer, the Shaw automobile, and logs extending beyond the rear of the body of the trailer.

The defendant Hockaday, called by plaintiffs as an adverse witness and later testifying in his own behalf, said that the trailer was equipped with two clearance lights, one on each side of the rear of the bed of the trailer, a stop light, a tail light and two turn-signal lights; that before leaving the lumber yard of the Waite Lumber Company, at approximately 8:30 P.M., he checked the lights on the tractor-trailer and they were all burning; that he entered route 1 and proceeded south with the intention of turning left at his home, which is approximately one-quarter of a mile from the lumber yard; that he turned on his left-turn signal light and pulled into the inside lane, continued for some distance with the signal light blinking, and stopped at a point opposite his home to await the clearing of northbound traffic so he could complete his turn; that when he brought his tractor-trailer to a stop a vehicle passed him in the outside lane; that he first saw the Shaw vehicle about 50 feet behind him in the inside lane before it crashed into the rear of his tractor-trailer; that the left-turn signal light on his tractor-trailer was on and blinking and all the lights of the tractor-trailer were on at the time of the collision; that he did not turn any of the lights off after the crash; that the right rear clearance light was out after the collision, but this did not affect the other lights, which continued to burn; and that the logs on the trailer were resting crosswise and not lengthwise.

There was other evidence introduced on behalf of plaintiffs relative to the identity of the tractor-trailer involved in the accident but the trial court struck this evidence after holding that the proper foundation had not been laid for its introduction. We do not deem it necessary to state this evidence or comment on the correctness of the court's ruling, since it is not controlling here and the question may not arise on a retrial of the case.

Clay W. Hagy, an employee of the Waite Lumber Company in charge of their rolling equipment, testified that he visited the scene of the accident around 8:45 or 9:00 P.M. and when he arrived the "car was up under the rear of the trailer on the right corner, toward the middle, but it was toward the right"; that the trailer was approximately 8 feet wide and was loaded with 5-foot logs resting crosswise on the bed of the trailer. The witness drew a diagram of the trailer showing the logs and the chains which held them, the clearance lights, turn-signals, stop light, tail light and reflectors. The diagram also showed a part of the left fender of the Shaw automobile bent around the bumper on the right rear of the trailer. He said that when he arrived at the scene all the lights on the trailer were burning, including the one which Hockaday said had been put out by the collision. The witness also described the two supports for the bumper and a metal strip extending across the back of the bed of the trailer.

Trooper Nelms said that he arrived on the scene around 9:30 P.M.; that the southbound passing lane was blocked by the vehicles involved in the accident and the right-hand southbound lane was partially blocked; that the ambulance and a number of people were there when he arrived; that the clearance lights on the rear of the vehicle "were lit up" and the left-turn signal light was blinking; that the clearance lights on the right and left of the bed of the trailer were inset 4 to 6 inches behind a metal strip extending across the back of the trailer with holes cut in the metal to permit the lights to shine through; that the bumper was attached to the metal strip; that the right rear of the trailer was damaged and the automobile sustained its major damage on the left front; and that he did not remember whether the trailer was loaded.

Ida Sanders, an employee of the corporate defendant, testified that she arrived at the scene shortly after the collision and that the left-turn signal light was on and there were some other lights burning on the tractor-trailer, but exactly where she could not state.

The crucial issue here is whether or not the lights were burning on the rear of the tractor-trailer at the time of the collision. If reasonable men could differ in their conclusions from a consideration of the evidence a jury question was presented, but if reasonable men could not disagree it was a question for the court.

We have many times said that "In considering a motion to strike out all the plaintiff's evidence, the evidence is to be considered

very much as on a demurrer to the evidence. All inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced, or contrary to reason." *Green* v. *Smith*, 153 Va. 675, 680, 151 S. E. 282, 283; *Pike* v. *Eubank*, 197 Va. 692, 698, 90 S. E. 2d 821, 825; *Smith* v. *New Dixie Lines*, 201 Va. 466, 470, 111 S. E. 2d 434, 437.

■ It has been repeatedly held as a general principle of law "that a prior or subsequent existence is evidential of a later or earlier one, and [it] has even been spoken of as a presumption." 2 Wigmore on Evidence, 3d ed., § 437, pp. 413, 414-418. See also *Barker* v. *Chicago, Etc. Ry. Co.*, 51 Ind. App. 669, 99 N. E. 135, 138; *Spund* v. *Myers*, 67 App. D. C. 135, 90 F. 2d 380, 383.

Thus when there is evidence that the lights on a motor vehicle were not burning immediately after an accident, this evidence is competent as tending to show that the lights were not burning at the time of the accident. At least it is evidence constituting more than a scintilla.

Here defendant Hockaday said that all the rear lights on the trailer were burning and the left-turn signal was blinking at the time of the accident and remained on for some time thereafter. There was also testimony from defendants' witnesses that all the lights on the rear of the trailer were on when they arrived on the scene as late as 45 minutes after the accident. On the other hand, Mrs. Shaw testified very emphatically that there were no lights burning on the back of the trailer when she looked "very soon" after the accident. When the Rev. Beach arrived on the scene immediately after the crash, and was within three feet of the rear of the trailer, he said that he did not see any lights burning on the rear of the trailer or the left-turn signal light blinking. From conditions existing around the scene of the accident, the Campbells were of the impression that the accident had occurred just a short time before they arrived, and they did not see any lights or reflections of light from the rear of the trailer. Hence the evidence is conflicting as to whether the lights were burning immediately after the accident.

It may be inferred from the testimony of Mrs. Shaw, which was positive, that since the lights on the rear of the trailer were not burning immediately after the accident that they were not burning at the time of the accident. While it is true that the evidence of the Rev.

Beach and the Campbells was in the nature of negative testimony, it cannot be said that it was so negative in character that it had no weight in tending to corroborate the positive testimony of Mrs. Shaw. *Railway Company* v. *Haley*, 156 Va. 350, 373, 374, 157 S.E. 776, 783. See also *C. & O. Railway* v. *Kinzer*, 206 Va. 175, 178, 142 S. E. 2d 514, 516.

Whether the lights were burning on the rear of the trailer immediately before and at the time of the accident presented a factual question upon which reasonable men may disagree. Hence it was for the jury to determine if Hockaday was guilty of negligence which was a proximate or efficiently contributing cause of the accident, and it was error for the trial court to strike plaintiffs' evidence and enter summary judgment for the defendants.

In oral argument before us defendants contended that since the evidence was uncontradicted that the trailer here involved was a 1952 model, the law in effect in 1952 (Code §§ 46-267[1] and 46-271,[2] Acts of 1952, ch. 652, p. 1104) which did not require reflectors on the rear of the trailer, was controlling, and that Code § 46.1-265, Acts of 1960, ch. 156, p. 164, requiring reflectors, was not applicable.

There is no merit in this contention. Motor vehicles operating on the highways of this State are required to comply with the statutes relating to lighting equipment in effect at the time of their operation. See § 46.1-259, as amended, Code of 1950, 1958 Repl. Vol. Hence § 46.1-265, as amended, which required reflectors and certain lighting equipment on the rear of defendants' trailer, is applicable here. Moreover, the president of the corporate defendant conceded in his testimony that he was required to comply with the provisions of § 46.1-265.

For the reasons stated, the judgments of the court below are reversed and set aside and the cases are remanded for a new trial.

*Reversed and remanded.*

---

[1] Now § 46.1-262
[2] Now § 46.1-265