## Richmond

### Julia L. Hagan, T/A Hagan Truck Line, and Marvin H. Bryant v. Evelyn Hicks, Executrix of the Estate of Louis Hicks, Deceased.

January 20, 1969.

Record No. 6833.

Present, All the Justices.

*John B. Preston* (*Preston, Preston & Wilson*, on brief), for plaintiffs in error.

*Edward A. Marks, Jr.* (*Frank B. Miller, III; Frank H. Pitchford; Sands, Anderson, Marks & Clarke*, on brief), for defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Louis Hicks was killed when a sedan delivery truck driven by him collided with the rear of a tractor-trailer owned by Julia L. Hagan and operated by her employee, Marvin H. Bryant. Evelyn Hicks, Louis Hicks' widow and executrix, brought an action against Hagan and Bryant seeking damages for the wrongful death of her husband.

The case was tried to a jury which found for plaintiff in the amount of $40,000.00. After overruling defendants' post-verdict motions the court entered judgment on the verdict and defendants are here on a writ of error.

They contend that the evidence failed to show them guilty of any negligence proximately causing Hicks' death; that the evidence showed, as a matter of law, that Hicks was guilty of contributory negligence; and that the court erred in instructing the jury.

Prior to hearing the evidence the jury viewed the location where the accident occurred.

The collision took place on September 22, 1966, about 5:30 a.m.— before daylight—on Warwick Boulevard, in the City of Newport News. The weather was cloudy but there was no evidence that it was raining or foggy. Warwick Boulevard, running generally north-south in the area of the accident, was dry and without defects, 22 feet wide, divided into two lanes, each about eleven feet wide. The speed limit was 45 miles per hour.

To make out her case the plaintiff introduced five witnesses, the substance of whose testimony was as follows:

Bill S. Holmes, a police officer who investigated the accident, testified that the point of collision was in the northbound lane of Warwick Boulevard, 384 feet north of its intersection with Oyster Point Road. North of the intersection, Warwick Boulevard curved slightly to the left as one proceeded north, the direction in which both Hicks' and defendants' vehicles were headed.

Holmes received a report of the collision at 5:43 a.m. and arrived at the scene five minutes later. He found the sedan delivery truck which Hicks had been driving stopped about in the center of the northbound lane, headed north, generally straight in the traffic lane. It had stopped at the point of impact. It had left no skid or scuff marks.

Defendants' vehicle was a truck tractor and flatbed trailer, loaded with logs. The tractor-trailer was 46 feet long and the logs extended

six or seven feet beyond the rear of the bed of the trailer. The bed was about eight feet wide and the logs were stacked so that some of them extended six to twelve inches beyond the sides of the bed on each side. This vehicle was stopped partially on the east shoulder of the road, its rear 81 feet north of the point of impact.

When Holmes arrived the taillights of Hicks' vehicle were burning but the headlights were broken out. He observed three lights burning on the rear of the bed of defendants' trailer. He saw these lights as he was measuring the distance between the two vehicles. From Hicks' vehicle the lights, which Holmes said were burning "very dimly," were "just barely visible". A light on the extreme left of the rear of the bed was "flickering slightly".

Holmes also observed a string of seven lights nailed to the logs themselves. None of these lights was burning and three were broken as were some of the wires leading to the lights. Two of the lights in the string were attached to the logs on the extreme left and right sides of the vehicle. He also saw three reflectors attached to the logs and two reflectors on the rear of the bed of the vehicle.

Holmes could determine no damage to defendants' vehicle and could not tell where Hicks' vehicle had struck the logs.

Yancey Noble, a heavy equipment operator, was driving to work on the morning of the accident. Between 5:00 and 5:30 a.m., he was traveling north on Warwick Boulevard and as he rounded the curve near the intersection of Oyster Point Road, he came upon a truck; "You couldn't see it. I didn't see it until the last moment and just in time to turn to miss it". "Just as I saw the truck, I don't know whether I saw a light or reflection or what it was, but it was something on the right hand corner of the truck. It wasn't on the back of the truck. It was more or less to the side of it. That's the reason I missed the truck, I suppose, and just something that—attracted my attention and I realized it was something in the road that shouldn't have been there."

Noble said he was traveling about 45 miles per hour. He had to swerve hard to his left and barely avoided striking the vehicle. Because of the curve in the road, he said, his lights did not hit the truck until "I was dead on the back of it".

As he went around the vehicle—a tractor-trailer loaded with logs —he saw that it was sitting still in the road, with it headlights on high beam, its cab or running lights on and its left-turn signal operating on the front. He saw no one in the truck.

Noble then drove on, seeking a police officer "to turn the truck in for not having the lights on the back of them and sitting in the middle of the road with no flares."

After looking in several places for an officer, Noble stopped at a business establishment to call the police but there learned of the accident. He went to the scene and there observed the same truck which, he said, had moved about 75 or 80 feet and was partially off the road. This was from 20 to 40 minutes after Noble had originally passed the truck.

The Reverend David Young, who lived nearby, heard the crash and after dressing quickly went to the scene—only two or three minutes after the collision. While assisting in preventing further collisions, he noticed reflectors on the logs but he did not remember any lights burning on the rear of defendants' vehicle; he did not pay any attention to that, he said.

Ralph Howell, who came upon the scene, testified that while standing in front of Hicks' vehicle he saw no lights burning on the rear of defendants' vehicle.

Terry Ferguson pulled his milk truck in between Hicks' and defendants' vehicle and saw reflectors on the latter but saw no lights burning on the rear thereof. He went to Hicks' vehicle and tried to assist a police officer, who had just arrived, in removing Hicks, who was then still alive, from under the steering wheel. Just then a man, whom Ferguson identified as Bryant, walked up and said, " 'Oh my God, no' ".

Hicks had left his residence on Maxwell Lane, south of the place of accident, about 5:15 a.m. to make business deliveries. His wife, plaintiff, saw him turn on the lights on his vehicle after he pulled out of their driveway.

Defendants introduced two witnesses. One was police officer H. T. Williams, who arrived at the accident scene about 6:00 a.m. to take photographs. He said that he observed a light burning on the left-hand side of the rear of the bed of the trailer as he walked up to it, and when he went up under the logs that were sticking over the bed he could see two other lights that were burning, "you * * just could see a glare in the light". He also said there were reflectors on the back of the trailer but he could not say how many.

The other was defendant Bryant, driver of the tractor-trailer, who testified that on the evening prior to the accident, after the logs were loaded, he affixed five running lights to the logs, including one

each on the two outside logs so that these lights could be seen from the cab mirrors; that he also attached three reflectors to the logs.

About 4:00 a.m., on September 22, 1966, before leaving the Hagan Truck Line yard in Chesapeake, he checked and found the lights operating. During the trip he stopped for a cup of coffee, leaving his four-way blinker lights operating and before leaving the truck stop—on the south side of the James River—he checked the blinkers and they were working.

After crossing the river and turning north onto Warwick Boulevard, Bryant drove at about 30-35 miles per hour until he passed the Oyster Point Road intersection. He then slowed to 12 to 15 miles per hour and activated his left-turn signal because he was going to turn left on Menchville Road which he knew to be north of Oyster Point Road and the church.

He then felt a slight impact and knew someone had hit the rear of his vehicle so he "drifted" off the side of the road and stopped.

Concerning the lights on the logs, Bryant said that they operated on one hot and one ground wire and "one ground will put them all out". The wires to these lights were hanging after the collision and Bryant attributed this to the collision.

He denied that he had stopped on Warwick Boulevard prior to the collision.

■ Defendants first contend that plaintiff failed to prove them guilty of any negligence proximately causing Hicks' death.

Since plaintiff was the successful litigant, the evidence must be viewed in the light most favorable to her. All conflicts in the evidence have, by the jury's verdict, been resolved in the plaintiff's favor.

"In this Commonwealth, we follow the salutary rule that questions of negligence and contributory negligence should, if at all appropriate, be left to the determination of the jury. This is because such questions, ordinarily, can only be determined by the sifting and appraisal of facts—matters which are exclusively within the province of the jury. * *" *Allen* v. *Brooks*, 203 Va. 357, 361, 124 S.E.2d 18, 21.

There was evidence from which the jury could find that defendants were guilty of negligence. While the exact time of the accident was not fixed, plaintiff's witness Noble testified that between 5:00 and 5:30 a.m. at the place where the collision occurred he came upon

defendants' vehicle stopped in the northbound lane of Warwick Boulevard; that as he rounded the curve near the intersection of Oyster Point Road and Warwick Boulevard, traveling about 45 miles per hour, he was barely able to avoid striking the stopped truck by swerving to his left; that because of the curve he could not see the vehicle in his headlights until he was "dead on" the rear of it. He said that he saw only a light or a reflector to the right side of the stopped vehicle, and that after successfully avoiding hitting it he sought a policeman "to turn the truck in for not having the lights on the back of them and sitting in the middle of the road with no flares."

"It has been repeatedly held as a general principle of law 'that a prior or subsequent existence is evidential of a later or earlier one, and [it] has even been spoken of as a presumption.' 2 Wigmore on Evidence, 3d ed., § 437, pp. 413, 414-418. See also *Barker* v. *Chicago, Etc. Ry. Co.*, 51 Ind. App. 669, 99 N.E. 135, 138; *Spund* v. *Myers*, 67 App. D.C. 135, 90 F.2d 380, 383." *Hall* v. *Hockaday*, 206 Va. 792, 797, 146 S.E.2d 215, 218.

Officer Holmes testified that after the accident, as he stood between decedent's and defendants' vehicles, which were a distance of 81 feet apart, three lights which were burning "very dimly" on the rear of the bed of defendants' vehicle were "just barely visible." Other witnesses who came to the scene after the collision saw no lights burning on the rear of defendants' vehicle.

Code § 46.1-248 (a) makes it unlawful to stop a vehicle in such a manner as to impede or render dangerous the use of the highway by others. Under the evidence it was for the jury to determine whether Bryant had violated this duty. See *Baxley* v. *Fischer*, 204 Va. 792, 798, 134 S.E.2d 291, 295.

Further, as the jury was instructed, at the time of day (darkness) when the accident occurred defendants were required to have lighted on the rear of their vehicle, among other lights, marker or dimension lights mounted at the extreme right and left-hand rear top corners of their vehicle capable of projecting a red light visible in clear weather for a distance of five hundred feet to the rear of the vehicle, Code § 46.1-265.

Therefore, the jury could have found from the evidence that defendants were negligent in not having their vehicle properly lighted.
█ Defendants next contend that even if their negligence was

to be determined by the jury, the evidence showed, as a matter of law, that Hicks was contributorily negligent.

In the absence of evidence to the contrary, it must be presumed that Hicks exercised ordinary care for his own safety and did only what an ordinarily prudent man would have done under the circumstances prevailing. *Unger* v. *Rackley,* 205 Va. 520, 527, 138 S.E.2d 1, 6; *Armstrong* v. *Rose,* 170 Va. 190, 203-4, 196 S.E. 613, 618.

Hicks had a right to assume that no obstructions or unlighted objects would be parked upon the highway in front of him. *Armstrong* v. *Rose, supra,* 170 Va. at 199, 196 S.E. at 616. He had a right to rely upon this assumption until, in the exercise of ordinary care, the contrary appeared or should have appeared to him, although this did not relieve him of the duty to exercise ordinary care to keep a proper lookout. *Davis, Adm'x* v. *Scarborough,* 199 Va. 100, 106, 97 S.E.2d 731, 736.

Noble testified that because of the curve his headlights had not played on the stopped truck until he was so close to the rear of it that he had to swerve sharply to his left to avoid hitting it; that possibly the only reason he saw it was a light or reflection to the right side of it.

Since the jury could have found from the evidence that defendants' vehicle was stopped in the road without proper lights on its rear, whether Hicks negligently failed to keep a proper lookout and thereby failed to see the vehicle was for the jury to determine.

■ Defendants next contend that the court erred in granting certain of plaintiff's instructions. The court granted twelve instructions for the plaintiff and eleven for the defendants, twenty-three in all. They were more than were needed and in their number more apt to confuse than to enlighten. We here consider defendants' objections to them according to our Rule 1:8, which requires that objections to instructions shall state with reasonable certainty the ground of objection, and unless so stated the objection will not be considered except for good cause shown, or to enable this court to attain the ends of justice. See *Ames & Webb, Inc.* v. *Commercial Laundry,* 204 Va. 616, 623, 133 S.E.2d 547, 552.

Defendants first complain of plaintiff's Instruction 6-A, which told the jury that in the absence of any evidence to the contrary it is presumed that decedent Hicks "did his duty" as he immediately approached the log truck; that he exercised ordinary care and did

what an "ordinary prudent man" would have done under the circumstances.

Defendants objected to it on the ground that "the evidence takes it out of the presumption" because it shows Hicks ran into the rear of the vehicle "without taking any evasive action".

The instruction was not objectionable on that ground. The jury could have found from the evidence that defendants' vehicle was stopped on the highway without proper lights and that Hicks did not have time for evasive action. The phrase "did his duty" was used in the opinion in *Armstrong* v. *Rose,* 170 Va. 190, at 203, 196 S.E. 613, at 618, but we do not approve its use in an instruction be-because not precise enough to be helpful to the jury.

Defendants next complain of the granting of plaintiff's Instruction 7-B, set out below.[1] Their objection was that it assumed a fact which was not supported by the evidence, *i.e.,* that defendants' vehicle was stopped when Hicks struck it. But the instruction does not assume that to be a fact. It only permits the jury to find it a fact if the jury believes the evidence warranted that finding. As is evident, the instruction was not clearly written but it was not so confused as to mislead the jury.

Defendants next contend that the court erred in granting plaintiff's Instruction 9, which told the jury that it was defendant Bryant's duty to use reasonable care, in substance: (1) not to drive at such slow speed as to impede normal traffic; (2) not to drive so as to endanger any person lawfully using the highway; (3) not to stop so as to impede or make dangerous the lawful use of the highway by others; and that these were continuing duties and if Bryant failed in any of them and such failure was the "sole proximate cause" of Hicks' death, the jury should find for the plaintiff unless Hicks was guilty of contributory negligence. Defendants' objections were that the "abstract principles" stated in the instruction were not supported by the evidence; that the instruction was misleading, repetitious and made Bryant an insurer.

Paragraph (1) of the instruction was based on the requirements

---

[1]"The Court instructs the jury that if they believe from a preponderance of the evidence that the Hagan truck was stopped on the highway so as to impede or render dangerous the free flow of traffic by others, if he, the decedent, was exercising ordinary care for his own safety, had a right to assume that the lane ahead of him was free for ordinary travel and he had a right to rely upon this assumption until, in the exercise of ordinary care, the contrary appeared, or should have appeared, to him, but this did not relieve him of the duty to exercise ordinary care to keep a proper lookout."

of § 46.1-193 (2) (a) of the Code and permissible for the jury to consider under the evidence. Paragraph (2) was based on § 46.1-189 of the Code and while repetitious and on a subject not specifically involved, its inclusion was not reversible error. Paragraph (3) was based on § 46.1-248 (a) of the Code. The word "lawfully" in paragraphs (2) and (3) of the instruction is not in the statutes, but its insertion in the instruction did no harm to the defendants and they made no objection on that point in the trial.

Defendants next complain of the giving of plaintiff's Instruction 11.

This instruction set forth the requirements of Code § 46.1-265 (a) and 46.1-268 (a) with respect to the lights on defendants' vehicle. There was evidence that the lighting on the vehicle failed to meet these requirements and no error occurred in the granting of this instruction.

Defendants say that the trial court erred in giving plaintiff's Instruction 12.[2]

This instruction was based on § 46.1-265.1 of the Code which by its terms is not applicable to vehicles subject to the provisions of § 46.1-265. As stated above, defendants' vehicle was subject to the provisions of § 46.1-265. However, defendants did not object to Instruction 12 on this ground. Their objection was on the ground that there was no evidence to support it; that "All the evidence in the case is to the effect the reflectors were mounted on the truck." Under the circumstances defendants are not entitled to have this case reversed for the giving of Instruction 12.

Finally, defendants contend that it was error to give plaintiff's Instruction 14.

It told the jury that contributory negligence is not to be presumed but must be proved by a preponderance of the evidence unless it appears from plaintiff's evidence. The instruction contained three paragraphs and defendants object now only to the second para-

---

[2]"The Court instructs the jury that the driver of any motor vehicle or combination of vehicles whose actual length, including the load thereon, exceeds 35 feet, shall use ordinary care when operating such vehicle during the hours of darkness, to have the same equipped with reflectors of a type approved by the Superintendent, and such reflectors shall be mounted on the widest part of the towed vehicle or the load thereon so as to be visible from the front and sides of the vehicle; and if the jury believe from a preponderance of the evidence that the defendant, Mr. Bryant, failed in the foregoing duty and that such failure, if any, was the sole proximate cause of the death of the decedent, Louis Hicks, then unless the decedent was guilty of contributory negligence which proximately contributed to cause the collision, you must find your verdict for the plaintiff and fix damages in accordance with other instructions of the Court."

graph, which stated that contributory negligence must be a contributing cause of the accident, and unless it was shown that Hicks was guilty of negligence which was a proximate or contributing cause, which combined with the negligence of Bryant and contributed directly to the death of Hicks, plaintiff was not barred from recovery by contributory negligence.

The record does not show that defendants made any objection to this instruction after it was amended and finally given. Their argument now is that the second paragraph should have contained the qualifying words, "or can be fairly inferred from all of the facts and circumstances." This phrase was included in the first paragraph of the instruction, and its omission in the second involved no reversible error.

The court below steered a reasonably accurate course through the maze of instructions offered and we find no reversible error in its rulings.

The judgment below is

*Affirmed.*