Timothy F. PEACOCK, in his capacity as Personal Representative of the estate of Colin Nicholas Peacock, Appellee,

v.

J.C. PENNEY CO., INC., Appellant,

v.

Timothy F. PEACOCK, as Personal Representative of the estate of Ann Rochelle Lynn Snyder-Peacock, Appellee.

Timothy F. PEACOCK, in his capacity as Personal Representative of the estate of Ann Rochelle Snyder-Peacock, Appellee,

v.

J.C. PENNEY CO., INC., Appellant.

Timothy F. PEACOCK, in his capacity as Personal Representative of the estate of Ann Rochelle Snyder-Peacock, Appellant,

v.

J.C. PENNEY CO., INC., Appellee.

Nos. 84–1456, 84–1464 and 84–1465.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1985.

Decided June 17, 1985.

Thomas P. Meehan, Washington, D.C. (Randall C. Ogg; Sherman, Fox, Meehan & Curtin, P.C., Washington, D.C., on brief), for appellant/cross-appellee.

Gary W. Brown, Washington, D.C. (Charles J. O'Hara, Falls Church, Va., on brief), for appellee/cross-appellant.

Before WIDENER and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Timothy F. Peacock, personal representative for the estate of his wife, Ann Peacock, brought a wrongful death action for compensatory and punitive damages against J.C. Penney Company, Inc. The jury found for Peacock and awarded compensatory damages. Penney contends that the trial court erred by not directing a verdict on the ground that Ann Peacock was contributorily negligent as a matter of law. Peacock cross-appeals the trial court's refusal to submit his claim for punitive damages to the jury. We affirm the judgment of the district court.

Ann Peacock died when she drove into the back of a stalled truck leased by Penney. The accident occurred in the third lane of eastbound traffic of the beltway near Alexandria, Virginia. At that point, the beltway has four lanes and wide shoulders. The speed limit is 55 miles per hour. A police officer testified that looking west from the scene of the accident, visibility was limited to 600 feet by a hill and a curve. The road was wet, and weather conditions were described variously as cloudy, drizzly, and misty.

The Penney truck stalled in the third lane at approximately 11:00 a.m. on March 8, 1983, and the driver could not restart it. The truck's emergency flashers were not functioning and it was not equipped with other warning devices such as reflective triangles or flares as required by Virginia law and federal safety regulations. At the time of the accident, approximately 12:00 noon, the driver was not flagging oncoming traffic, although earlier he had given warning by hand signals. Several drivers testified that they had difficulty determining whether the truck was moving until they were very close to it and that they had to swerve suddenly to avoid a collision. Ann Peacock's car left no skid marks or other signs of evasive action. She died instantly.

I

Penney contends that the trial judge should have directed a verdict on the issue of contributory negligence. It argues that Mrs. Peacock was negligent as a matter of law because she failed to keep a proper lookout and violated Virginia law by operating her vehicle in a dangerous manner. Her negligence, it asserts, superseded Penney's negligence and insulates Penney from liability.

Because Penney's negligence is unquestioned, the only issue pertaining to liability for compensatory damages is whether the defense of contributory negligence presented a question for the jury. In a diversity case, a federal standard determines whether the evidence is sufficient to warrant submission of an issue to the jury. It is the function of the jury, not the court, to resolve conflicting inference of reasonable probability drawn from circumstantial evidence. *Wratchford v. S.J. Groves & Sons Co.*, 405 F.2d 1061, 1064–67 (4th Cir.1969). Of course, Virginia law determines what constitutes contributory negligence.

■ Virginia law did not place upon Ann Peacock the absolute obligation to avoid colliding with Penney's truck. On the contrary, a following driver has a right to assume that no obstruction is parked on the highway. Moreover, the driver can rely on this assumption until the contrary appears, or should have appeared in the exercise of ordinary care to keep a proper lookout. *See, e.g. Hagan v. Hicks*, 209 Va. 499, 505, 165 S.E.2d 421, 426 (1969); *Armstrong v. Rose*, 170 Va. 190, 199, 196 S.E. 613, 616 (1938).[1]

■ The evidence raises conflicting inferences about Mrs. Peacock's performance of her duties as a following driver. The

---

1. Cases cited by Penney refer to the duty to exercise ordinary care to keep a proper lookout, but in other respects they are distinguishable. *See, e.g. Lendvay v. Sobrito*, 211 Va. 548, 178 S.E.2d 532 (1971); *Maroulis v. Elliott*, 207 Va. 503, 151 S.E.2d 339 (1966); *Nehi Bottling Co. v. Lambert*, 196 Va. 949, 86 S.E.2d 156 (1955).

absence of skid marks and the avoidance of the truck by other drivers raises a reasonable inference that she was not exercising ordinary care to keep a proper lookout. But other facts raise a reasonable inference that she met her duties. By the time of the accident the Penny employee had stopped trying to caution oncoming traffic. Drivers immediately ahead of and behind Mrs. Peacock had trouble avoiding the truck. Her speed was lawful. There were no warnings that the truck was stopped in her lane of travel, and visibility and weather conditions were poor. Consequently, the district court properly allowed the jury to resolve these conflicting, permissible inferences. *Wratchford*, 405 F.2d at 1066. Virginia law, although expressed in somewhat different terms, is not to the contrary. *See Allen v. Brooks*, 203 Va. 357, 361, 124 S.E.2d 18, 21–22 (1962).

II

Peacock's assignment of error to the district court's refusal to submit the issue of punitive damages to the jury is predicated upon the following evidence, which we will assume to be true. Although Penney's supervisors knew that from time to time their trucks had broken down on the highway, they did not equip the truck involved in the accident with reflectors or flares as required by law. Penney had not trained its drivers about safety procedures in event of a breakdown, and it did not establish a fleet safety program as required by law. It did not maintain requisite records of driver training and the condition of its fleet. It modified the truck, leaving a dangerous rear platform without underride protection. The truck's flashers were not operating as required by law, and the driver did not turn on the truck's lights. The driver discontinued manual warning signals and was standing near the median when the collision occurred. Penney knowingly misrepresented in its federal accident report that the truck's flashers were operating. Peacock contends that these facts, which he has expansively presented in his brief and oral argument, satisfy all of the elements defined by Virginia law for an award of punitive or exemplary damages.

■ Viewed in the abstract, Peacock's argument for submission of the issue of punitive damages to the jury has considerable merit. Undoubtedly, the evidence would justify punitive damages in some jurisdictions. *See, e.g. Anderson v. Eagle Motor Lines, Inc.*, 423 F.2d 81, 84–85 (5th Cir.1970) (Mississippi); *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 162–66 & f.n. 3, 297 A.2d 721, 729–34 (1972). The Supreme Court of Virginia, however, has adopted more exacting criteria. We therefore agree with the district court that Virginia law precludes an award of punitive damages.

The Virginia wrongful death statute, as amended in 1982, allows punitive damages "for willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others." Va.Code § 8:01–52(5). The Supreme Court of Virginia has not applied this statute to a claim arising from a fatal traffic accident. Nor has the Court dealt with a claim of punitive damages in circumstances resembling the facts of this case. Therefore, our task is to decide, as best we can, what the Supreme Court of Virginia would rule were the issue presented to it.

Before 1982 punitive damages could not be recovered in wrongful death actions. *Wilson v. Whittaker*, 207 Va. 1032, 154 S.E.2d 124 (1967). The purpose of the 1982 amendment was to permit what previously had been prohibited. Because the text of the amendment follows the language of cases setting forth the standard of conduct for punitive damages, we can rely on cases decided before 1982 to ascertain Virginia law on this issue.

With one exception, the Supreme Court of Virginia has denied recovery of punitive damages to persons injured by motor vehicles. The single exception allowed an award against a creditor who ran down his debtor, pinned him under the car, and demanded payment of the debt. *See Friedman v. Jordan*, 166 Va. 65, 184 S.E. 186

(1936). This assault is quite different from the conduct attributed to Penney.

In *Baker v. Marcus,* 201 Va. 905, 114 S.E.2d 617 (1960), involving a driver who had been drinking, the Supreme Court of Virginia considered for the first time a claim for punitive damages arising from an unintentional traffic accident. The Court acknowledged that in some jurisdictions gross negligence, or the violation of a criminal law, would support an award of punitive damages, but it did not embrace these theories. Instead, it applied to traffic accidents its common law distinction between compensatory and punitive damages, which it reiterated as follows:

> Exemplary damages are allowable only where there is misconduct or malice, or such recklessness or negligence as evinces a *conscious* disregard of the rights of others. But where the act or omission complained of is free from fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible....

*Baker,* 201 Va. at 909, 114 S.E.2d at 621. The Court explained that ill will and proof of actual malice are unnecessary; malice can be inferred from circumstances. Nevertheless, the Court stated that driving under the influence of intoxicants, though illegal and reckless, will support an award only for compensatory damages in the absence of an element justifying punitive damages. 201 Va. at 910, 114 S.E.2d at 621. The trial court in *Baker* therefore erred by submitting the issue of punitive damages to the jury. The principles explained in *Baker* were applied in *Eubank v. Spencer,* 203 Va. 923, 128 S.E.2d 299 (1962) and *Jackson v. Prestage,* 204 Va. 481, 132 S.E.2d 501 (1963).

Penney was negligent, and its acts and omissions were unlawful. Nevertheless, the evidence showed that Penney's conduct did not meet the criteria for punitive damages set forth in *Baker.* Consequently the district court did not err in withdrawing from the jury the issue of punitive damages. We therefore find it unnecessary to consider Penney's alternative defense that it is not subject to punitive damages incurred by the acts of its employees.

## III

 The jury's verdict absolving Ann Peacock of contributory negligence forecloses Penney's claim for contribution from her estate for the settlement that it paid to discharge its liability for the death of her infant son, who was a passenger in the car. We find no ground for reversal in Penney's other assignments of error. The judgment of the district court is affirmed.