# Richmond

## Curtis Veale v. Norfolk and Western Railway Company, Et Al.

January 18, 1965.

Record No. 5820.

Present, Eggleston, C. J., and Buchanan, Snead, l'Anson and Carrico, JJ.

*Leonard B. Sachs* (*Kanter, Kanter & Sachs,* on brief), for the plaintiff in error.

*J. Riley Johnson, Jr.* (*Thomas R. McNamara; Williams, Cocke, Worrell & Kelly,* on brief), for Norfolk and Western Railway Company, defendant in error.

*Virgil S. Gore, Jr.* (*Seawell, McCoy, Winston & Dalton,* on brief), for Norfolk and Portsmouth Belt Line Railroad Company, defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, Curtis Veale, brought this action for damages against Norfolk and Western Railway Company (Norfolk and Western) and Portsmouth Belt Line Railroad Company (Belt Line). In his motion for judgment he alleged that he was an employee of Cargill, Inc., and while he was engaged in unloading a boxcar loaded with grain, a sliding door of the car fell from its mountings and injured his leg. He made these additional allegations:

The car was owned by Minneapolis & St. Louis Railroad Corporation. It had been delivered to Norfolk and Western to transport to South Norfolk, Virginia, to be delivered to the grain elevators of Cargill. The car had been emptied of its grain and the engineer of a diesel locomotive was preparing to take it away from the dumping area. The plaintiff was handsignaling the engineer, the boxcar was coupled to the locomotive and moved backwards some distance, bringing the door of the car opposite the plaintiff, at which time the door fell.

The motion for judgment alleged that it was the duty of Norfolk and Western to inspect said car at regular and frequent intervals from the time it came into its possession, and to maintain and repair any and all defects found as a result of such inspection; and that the law imposed upon Belt Line the duty to inspect said car "when it came into your custody and control immediately prior to the occasion complained of," and to maintain and repair any defects noted prior to delivering the car to Cargill.

It was further alleged that the defendants negligently failed to inspect, maintain and repair the defective door and appurtenances of the car, and as a proximate result plaintiff suffered the injuries complained of.

Norfolk and Western demurred to the motion for judgment on the grounds that it was not the delivering carrier but an intermediate carrier and owed no duty to plaintiff, and even if it had been negligent, such negligence could not have been the proximate cause of the plaintiff's injuries. Belt Line demurred on the ground that it owed no duty to the plaintiff. By the order appealed from the demurrers were sustained and the plaintiff's action dismissed.

Supplementing the allegations of his motion for judgment, the plaintiff states in his brief that plaintiff's primary responsibility as Cargill's employee was to assist in dumping railroad cars loaded with grain, to assist in positioning the cars on the hydraulic grain dumper, to open and close the cars and couple and uncouple them; that this car was turned over to Belt Line upon arrival in the area and delivery of the car to the Cargill premises was made by Belt Line.

Plaintiff further states that on the Cargill premises a switch engine, operated by a Cargill employee, places the grain cars on track owned or leased by Cargill, and when ready for dumping this engine moves the cars into position on the hydraulic dumper where plaintiff performed his duties; that at the time of this accident the engineer of the switch engine was backing the engine in order to couple with the empty car and remove it, and when the engine "jolted the empty car" the plaintiff saw the sliding metal door falling towards him.

Plaintiff assigns error to the sustaining of the demurrers and dismissing his suit. He says the court did this on the authority of *Risque* v. *Chesapeake & Ohio Ry. Co.*, 104 Va. 476, 51 S.E. 730, which he states is contrary to the common law rule of third party tort-feasor liability in this State and should now be overruled. The record does not show the court's reasons for sustaining the demurrers and defendants say that ample additional authority was given to the court as basis for its action.

In the *Risque* case the plaintiff's decedent, an engineer employed by an iron company, and engaged in shifting cars on the company's yard, was killed when he backed his engine onto the main line of the defendant railway company in the path of an approaching passenger train without looking, although he knew it was due. The court held that the defendant's demurrer to the evidence was properly sustained because the plaintiff's decedent was guilty of negligence that could only be characterized as reckless. The opinion also stated that a demurrer to two counts in the plaintiff's declaration, which charged the defendant with negligence in furnishing cars with defective

brakes, was properly sustained because it was the duty of the iron company to inspect the cars and remedy the defect, and not the duty of the defendant railway company. It does not appear from the opinion that any causal relation existed between the defective brakes and the happening of the accident, or what the contractual relation was between the iron company and the railway company. The decision was that the liability, if any, rested only on the iron company, and the holding is not conclusive of the present case.

In many cases we have recognized and applied the principle that if liability of a third party tort-feasor exists it is not taken away from the employee by the compensation laws which control his right against his employer. *Feitig* v. *Chalkley*, 185 Va. 96, 101, 38 S.E.2d 73, 75. In *Fauver* v. *Bell*, 192 Va. 518, 526, 65 S.E.2d 575, 580, we said:

"The [Workmen's Compensation] Act* does not deny an injured employee the right to pursue his action at law against a negligent third party. The rights and remedies granted under section 65-37 [of the Act] are exclusive only as to an employee and his employer, and only his right to sue his employer for damages is barred by the acceptance of compensation under the Act. * *."

But the common law right is based on negligence, and negligence is the violation of a legal duty which one owes to another, and where there is no legal duty there is no actionable negligence. 13 Mich. Jur., Negligence, § 2, p. 508. And negligence, of whatever kind, cannot create a cause of action unless it is the proximate cause of the injury complained of. *Richardson* v. *Lovvorn*, 199 Va. 688, 692, 101 S.E.2d 511, 514; 13 Mich. Jur., Negligence, § 21, p. 529.

The negligence alleged in this case against the defendant carriers is a breach of duty to inspect. The duty of railroad carriers to inspect varies as their relation to the instrument which causes the injury varies, depending on whether the carrier sought to be held responsible is the initial, the intermediate, or the delivering carrier.

From the facts alleged it appears that the Norfolk and Western was, with respect to the car which caused the injury, an intermediate carrier. It received the car from Minneapolis & St. Louis Railroad Corporation and delivered it to Belt Line. As such intermediate carrier it owed no duty to the plaintiff to inspect or examine the car to see whether it was in a safe condition for the plaintiff to unload it. In 75 C.J.S., Railroads, § 924 at p. 337, it is said:

---

* Code, 1950, Title 65, § 65-1 *ff.* and 1964 Cum. Supp.

"An intermediate carrier by rail is not obliged to inspect a car for the benefit of the consignee or of the employees of the consignee and does not owe a duty to them with respect to the safe condition of the car for unloading."

Similarly it is said in 44 Am. Jur., Railroads, § 434 at p. 656:

"* * As to an intermediate carrier, its duty is to examine the car to see whether it is in a reasonably safe condition to be hauled by it to its terminus and there to be in such a condition that its connecting intermediate or ultimate carrier would be bound to receive it for transportation from such intermediate carrier. But it is no part of the duty of an intermediate carrier to examine a car to see whether it is in a safe condition for anyone to enter for the purpose of unloading it when it reaches its destination. * *." See Annotation, 152 A.L.R. 1313.

The reason for the distinctions is thus stated in *Doering* v. *St. Louis & O'Fallon Ry. Co.* (Mo. App.), 63 S.W.2d 450, 451:

"Quite obviously, however, in the case of an intermediate or connecting carrier, the measure of duty is not the same. In the first place, such a carrier has had no part in the matter of selection, and can therefore not be held to a liability for having furnished, or loaded the freight upon, an unsafe or defective car. Furthermore, no persons other than its own employees can have any lawful right to enter upon the car while the same is in its possession. Consequently, the only duty of an intermediate or connecting carrier is to examine the car to see whether it is in a reasonably safe condition to be hauled by it to its own terminus or connecting point and there to be delivered to the next succeeding carrier; and it is no part of its obligation to examine the car with a view to determining whether it is in a safe condition for any one to enter upon it for the purpose of unloading it after it has arrived at its ultimate destination."

As authority for this statement the court refers to *Sykes* v. *St.Louis & S.F.R.Co.*, 178 Mo. 693, 77 S.W. 723, as a leading case on the subject in Missouri and elsewhere. See *Yandell* v. *National Fireproofing Corp.*, 239 N.C. 1, 79 S.E.2d 223; *Watterson* v. *New York Central Railroad Co.*, (6 Cir.), 235 F. 2d 114; *Huck* v. *Chicago, St.Paul, etc., Ry. Co.*, 16 Wis.2d 466, 114 N.W.2d 811.

The facts alleged show that plaintiff did not state a case against the Norfolk and Western and its demurrer was properly sustained.

█ Belt Line contends that it also was an intermediate and not the ultimate or delivering carrier.

"* * A delivering carrier by rail, which delivers to the consignee

for unloading a car received by it from a connecting carrier, owes to the employees of the consignee, who are required to unload the car, the legal duty to make a reasonable inspection of the car to ascertain whether it is reasonably safe for unloading, and to repair or give warning of any dangerous condition in the car discoverable by such an inspection. * *." *Yandell* v. *National Fireproofing Corp., supra,* 239 N.C. 1, 79 S.E.2d at 227. Annotation, 126 A.L.R. 1095.

In *Ambrose* v. *Western Maryland Ry. Co.,* 368 Pa. 1, 81 A.2d 895, the general rule is stated to be that a railroad company before delivering a loaded car to the consignee must make an inspection thereof sufficiently thorough to ascertain whether there is "any *fairly obvious defect* in its construction or state of repair which constitutes a likely source of danger."

In the present case the Belt Line was not the ultimate carrier in the sense that it had the final charge and control of the car which caused the plaintiff's injury. Before the injury occurred plaintiff's employer, the consignee, had taken control of the loaded car, transported it over its own tracks by its own engine, placed it on its hydraulic dumper, unloaded it and returned the empty car to the employer's tracks to be coupled to its engine, and when the empty car was jolted by the engine in making the coupling its sliding metal door fell and injured the plaintiff. We hold that under these circumstances Belt Line was not chargeable with the duty of inspection ordinarily resting upon a delivering carrier.

Furthermore, there is no allegation as to the character of the alleged defect or what caused the door to fall; no allegation that any defect existed in the door while the car was in the possession of Belt Line or Norfolk and Western; no allegation that the defect should have been discovered by Belt Line upon reasonable inspection. Unless it was so discoverable it was immaterial whether any inspection was made. No facts establishing negligence on the part of Belt Line are alleged and the doctrines of *res ipsa loquitur* and exclusive control are not applicable. *Ambrose* v. *Western Maryland Ry. Co., supra,* 81 A.2d at 898, 899.

It follows that even tested by the duties owing by a delivering railroad company, the facts alleged are not sufficient to convict Belt Line of negligence and its demurrer was properly sustained.

The order appealed from is accordingly

*Affirmed.*