𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## NORFOLK AND WESTERN RAILWAY COMPANY

v.

## MARVIN E. CHRISMAN, ET AL.

August 31, 1978.

Record No. 770474.

Present: All the Justices.

*Phillip C. Stone (W.W. Wharton; George H. Roberts, Jr.; Wharton, Aldhizer & Weaver,* on brief) for plaintiff in error.

*Robert Scott Janney (Roby G. Janney; Janney & Janney,* on brief) for defendant in error.

CARRICO, J., delivered the opinion of the Court.

By motion for judgment filed in the court below, Marvin E. Chrisman sought to recover from Norfolk and Western Railway Company (hereinafter, N&W) damages for personal injuries sustained when the door of a boxcar fell on him while he was unloading the car for his employer, Southern States Cooperative,

Incorporated.* In a jury trial, Chrisman was granted instructions upon theories of both proven negligence and *res ipsa loquitur*. The trial resulted in a verdict in favor of Chrisman for $100,000.

N&W moved to set the verdict aside. Concluding that it had erred in instructing the jury upon the theory of *res ipsa loquitur*, the trial court granted the motion and, over N&W's objection, ordered a new trial. Upon instructions granted Chrisman relating solely to a theory of proven negligence, the second jury returned a verdict in favor of Chrisman for $115,000. The court confirmed this verdict.

On appeal, N&W's principal assignments of error present the question whether, upon the evidence submitted at the first trial, final judgment should have been entered in favor of N&W after the first verdict was set aside. Accordingly, we shall examine the evidence presented at the first trial. This evidence shows that N&W owned the boxcar in question and furnished it for loading at the Southern States mill in Roanoke. After Southern States' employees had loaded the car with sacks of feed, N&W transported the car and delivered it to a siding adjacent to the Southern States store at Luray, in Page County.

The boxcar door, six feet wide and ten feet high, was made of steel, and it weighed approximately 400 pounds. Resting upon and attached to a lower rail, the door was held in place at the top by an upper guide or track. This guide or track consisted of a "Z-bar," or angle iron, one-quarter inch thick and 12 feet 6 inches long, the outer portion of which cupped over the top of the door. When the door was closed, its top extended into the upper guide approximately one inch. When opened and raised on rollers designed to carry it along the lower rail, the door was elevated into the upper guide an additional 1/16 inch.

On July 13, 1971, Chrisman was assigned to unload the car. Standing on the platform of Southern States' store, he attempted to

---

*After service of Chrisman's motion for judgment, N&W filed a third-party motion for judgment against Southern States seeking recovery under an indemnity agreement for "all sums that may be adjudged" against N&W in favor of Chrisman. The trial court's action with respect to the third-party motion for judgment is the subject of a separate opinion handed down today under the style, *Southern States Cooperative, Incorporated v. Norfolk and Western Railway Company, Incorporated, et al.*, 219 Va. 191, 247 S.E.2d 461 (1978).

open the car door by hand. Unsuccessful in his attempt, he secured from inside the store a "come-along," a crank-pulley device he, as well as railroad employees, customarily used to open boxcar doors. He hooked one end of the "come-along" to the handle of the door and the other to the ladder at the end of the car, placing the device in a horizontal position. Kneeling on one knee while cranking the device, he moved along with the door as it opened. When the door was approximately two-thirds open, it came out of the upper track and fell on Chrisman, pinning him to the platform. He was extricated by a fellow employee.

Examination of the boxcar by railroad employees shortly after the accident revealed a defect in the upper door guide, consisting of an area where the outer portion of the guide was "bulged out" by as much as one inch over a length of six inches to one foot. The metal in this and a larger adjacent area, "at some time or another," had been "heated and straightened," and the metal was "awful rusty." According to one railroad employee, "it looked like the door had come out" where the upper track was defective. Another railroad employee acknowledged that, if the "come-along" was "hooked up" in a horizontal position, the door "would not have come off . . . unless there had been some defect in the door or the track."

N&W contends initially that final judgment should have been entered in its favor after the first verdict was set aside because the evidence was insufficient as a matter of law to show any negligence on its part. Relying upon *Veale* v. *Railway Company*, 205 Va. 822, 139 S.E.2d 797 (1965), N&W seems to suggest that it was only an intermediate carrier and that, as such, it owed no duty to inspect the boxcar in question to determine whether it was in a safe condition for unloading.

*Veale* does stand for the proposition that an intermediate carrier owes no duty to inspect a car to determine whether it is safe for unloading. But *Veale* also stands for the proposition that a railroad carrier's duty varies as its relation to the car varies, depending upon whether the railroad company is sought to be held liable as the initial, the intermediate, or the delivering carrier.

In the present case, N&W was not only the intermediate carrier but also the initial and the delivering carrier. As the initial carrier,

N&W owed to the employees of the consignee, Southern States, who would be required to unload the car, the duty to exercise ordinary care to furnish a car in such condition that it could be unloaded with reasonable safety. *Yandell v. National Fireproofing Corp.*, 239 N.C. 1, 6, 79 S.E.2d 223, 226 (1953). As the delivering carrier, N&W owed to those same employees the duty, in the exercise of ordinary care, to inspect the car to determine whether it was reasonably safe for unloading and to repair or give warning of any dangerous condition discoverable by the inspection. *Veale,* 205 Va. at 826-27, 139 S.E.2d at 800; *Yandell,* 239 N.C.1 at 6, 79 S.E.2d at 227. The required inspection should have been sufficiently thorough to determine whether there was "any *fairly obvious defect* in [the car's] construction or state of repair which constitute[d] a likely source of danger." *Ambrose v. Western Maryland Railway Co.,* 368 Pa. 1, 7-8, 81 A.2d 895, 898 (1951).

■ In the present case, the evidence established conclusively that a defect existed in the upper door guide after the accident. And the evidence justified the conclusion that, if the defect preexisted the accident, the defect caused the door to fall out and strike Chrisman. N&W argues, however, that the evidence was insufficient to establish that the defect preexisted the accident or that, if it did, its presence would have been discoverable by a reasonable inspection.

We disagree with N&W. In the first place, evidence of the existence of the defect after the accident tended to show that the defect preexisted the accident. *Hagan v. Hicks,* 209 Va. 499, 504, 165 S.E.2d 421, 425 (1969); *Hall v. Hockaday,* 206 Va. 792, 797, 146 S.E.2d 215, 218 (1966). Furthermore, the "awful rusty" condition of the metal in the defective area justified the inference that the defect had existed for an appreciable period before the accident. And, finally, because the defect was clearly apparent to railroad employees after the accident, the conclusion was justified that the defect would have been "fairly obvious" upon a reasonable pre-delivery inspection by N &W.

Under circumstances almost identical with those in the present case, the Supreme Court of Wisconsin, in *Brehmer v. Chicago & North Western Railway Company,* 269 Wis. 383, 69 N.W.2d 565 (1955), held that it was a question for jury determination whether

the railroad company had breached its duty to furnish for unloading a car reasonably free from discoverable defects. We reach the same conclusion in the present case.

■ N&W next contends that, even if it was primarily negligent, final judgment should have been entered in its favor because the evidence established as a matter of law that Chrisman was contributorily negligent or that he voluntarily assumed the risk of injury. N&W argues first that Chrisman neglected to inspect the upper guide before he attempted to open the boxcar door and thus failed to discover the "bulged out" defect. The duty of inspection, however, was upon N&W, not Chrisman. Furthermore, there is nothing in the record to suggest that, even if Chrisman had observed the "bulged out" area before he attempted to open the door, he, or any reasonable person in his position, would or should have known that the defect would cause the door to fall.

N&W argues next that Chrisman improperly hooked the "cranking end" of the "come-along" to the door, thus placing himself in a position where the door would strike him if it fell, rather than to the ladder of the boxcar, where he could have cranked the "come-along" in a place of safety. But the evidence did not show conclusively that Chrisman's method of connecting the "come-along" was improper; neither was it shown that use of this method would cause the door to fall. Chrisman testified that he had employed the same method without incident for some nine years. And, although one railroad employee stated that he "usually" attached the "cranking end" of the device to the ladder rather than to the door, this witness acknowledged that "you could hook either end into the ladder."

Finally, N&W argues that, although Chrisman heard a "rubbing noise" and knew the door was "binding" as he opened it with the "come-along," he made no examination to determine the cause of the "binding." Nothing in the evidence indicates, however, that the "rubbing noise" or "binding" should have alerted Chrisman to the possibility of danger. Indeed, Chrisman stated that he had "seen a lot" of boxcar doors bind in the process of opening and that he never before had experienced a falling door.

We believe, therefore, that the questions of contributory negligence and assumption of risk, along with the issue of primary

negligence, were matters for jury determination. Accordingly, we hold that the trial court did not err in refusing to enter final judgment in favor of N&W or in ordering a new trial.

This brings us to N&W's sole assignment of error concerning the second trial. During the course of that trial, Chrisman called as witnesses and elicited testimony from three railroad employees who had investigated his accident. On cross-examination of these witnesses by N&W, the trial court refused to permit them to express their opinions, proffered out of the presence of the jury, that the "bulged out" defect in the upper door guide was caused by "the door coming off" or "being pulled loose" at the time of Chrisman's accident. This was error, N&W contends, because Chrisman had qualified the witnesses as experts and had elicited opinion testimony from them. It sould not have been precluded, N&W says, "from cross-examination of the opinions of those same witnesses."

It is apparent from the remarks of the trial judge in ruling upon the question that he considered that Chrisman had not offered the witnesses as experts on direct examination and had not elicited opinion testimony from them. It is clear also that the judge concluded that N&W's questions on cross-examination not only exceeded the scope of the direct examination but also called for opinions the witnesses were not qualified to express. The record tends to support the judge's conclusions. Accordingly, we cannot say that the trial court abused its discretion in refusing to permit the witnesses to express the proffered opinions before the jury. *Landis* v. *Commonwealth,* 218 Va. 797, 241 S.E.2d 749 (1978); *Miller* v. *Commonwealth,* 153 Va. 890, 895-96, 149 S.E. 459, 460 (1929).

For the reasons assigned, the judgment of the trial court approving the second verdict will be affirmed.

*Affirmed.*