## Richmond

SOUTHERN STATES COOPERATIVE, INCORPORATED

v.

NORFOLK AND WESTERN RAILWAY COMPANY, INCORPORATED, ET AL.

August 31, 1978.

Record No. 770483.

Present: All the Justices.

*D.P. Rabun (Joseph W. White; T. Munford Boyd; Larrick, White and Rabun; Paxson, Smith, Boyd, Gilliam & Gouldman,* on brief) for plaintiff in error.

*Phillip C. Stone, C.W. Wharton; George H. Roberts, Jr.; Wharton, Aldhizer & Weaver* on brief) for defendants in error.

CARRICO, J., delivered the opinion of the Court.

This case is a companion to *N.&W. Railway* v. *Chrisman,* 219 Va. 184, 247 S.E.2d 457 (1978), decided today. There, we affirmed a judgment for $115,000 in favor of Marvin E. Chrisman against Norfolk and Western Railway Company (hereinafter, N&W). The judgment in favor of Chrisman was for personal injuries he sustained as a result of N&W's negligence while he was unloading a boxcar for his employer, Southern States Cooperative, Incorporated (hereinafter, Southern States).

While the *Chrisman* case was pending in the trial court, N&W filed in that proceeding a third-party motion for judgment against Southern States seeking to recover under an indemnity agreement for "all sums that may be adjudged" against N&W in favor of Chrisman. After entry of the judgment in favor of Chrisman, the trial court heard argument on N&W's third-party motion. Rejecting Southern States' contention that the indemnity agreement was invalid as "contrary to public policy," the court ordered that, upon payment to Chrisman, N&W " shall have judgment against . . . Southern States . . . to the full extent of its payment." This action of the trial court is the subject of the present appeal.

The record shows that on February 11, 1968, N&W leased to Southern States a former freight station at Luray, in Page County, for use as a retail store. On July 13, 1971, during a renewal period of the lease, Chrisman was injured when, standing on the platform

of the leased building, he attempted to open the door of a boxcar he had been assigned to unload. Because of a defect in the car, the door fell and struck Chrisman.

At the time of Chrisman's injury, the boxcar in question, owned by N&W, was parked on N&W's siding adjacent to the leased building. Earlier, N&W had furnished the car for loading at the Southern States mill in Roanoke and then had transported and delivered the loaded car to Southern States at Luray.

The lease agreement between N&W as lessor and Southern States as lessee contained this indemnity provision:

"[T]he Lessee covenants and agrees to indemnify and save the Lessor harmless from and against any and all loss, damage, claims or liability for personal injury occurring on the leased premises or in connection with the use thereof, including death resulting from such personal injury, to the Lessee or Lessee's agents, employees or licensees, and for damage to the leased premises or loss of or damage to property, to whomsoever belonging, on the leased premises, caused by, arising out of or incident to the condition, existence, use or occupancy of said leased premises, or by the business carried on by the Lessor, or by the negligence of the Lessor, its agents, servants or employees, or otherwise."

The question for decision is whether this indemnity provision is invalid under Code § 56-119 insofar as the provision purports to relieve N&W from liability for breach of its duty as a common carrier to furnish for unloading by the employees of Southern States a railroad car reasonably free from discoverable defects. Code § 56-119 provides as follows:

"No contract, receipt, rule, or regulation shall exempt any transportation company from the liability of a common carrier which would exist had no contract been made or entered into and no such contract, receipt, rule, or regulation for exemption from liability for injury or loss occasioned by the neglect or misconduct of such transportation company as a common carrier shall be valid."

N&W contends that the question of the validity of the indemnification provision involved in this case "has been clearly decided by this Court" in *C. and O. Ry. Co.* v. *Telephone Co.*, 216 Va. 858, 224 S.E.2d 317 (1976). Pursuant to that decision, N&W argues, the question whether a transportation company occupies the status of a common carrier with respect to a particular injury is to be determined as of the time the indemnity agreement is executed, rather than the time of injury. It occupied the status of a private property owner when it executed the agreement in question, N&W says, and thus was entitled to insulate itself from the risk of loss arising out of the use of its property by Southern States. Furthermore, N&W maintains, only exemption agreements are prohibited by Code § 56-119, and the agreement in question provides not for exemption but merely for indemnification.

Southern States concedes that N&W acted in its private capacity when it executed the lease containing the indemnification agreement. Southern States argues, however, that the relationship of shipper-carrier existed between it and N&W at the time of Chrisman's injury and that N&W, therefore, occupied the status of a common carrier with respect to the injury. N&W's status at the time of injury is controlling, Southern States maintains, and the indemnification agreement is ineffective to alter N&W's liability arising from that status. The *C. & O.* v. *Telephone Co.* case dealt only with the private status of the parties there involved, Southern States asserts, and the decision is not authority for the proposition that N&W's liability is to be determined as of the time the indemnification agreement was executed. Furthermore, Southern States concludes, the prohibition of Code § 56-119 applies not only to exemption agrements but also to indemnification provisions of the type involved in this case.

The *C. & O.* v. *Telephone Co.* case involved an agreement whereby the railway company granted the telephone company a license to install telephone lines across a railroad right-of-way in Covington. The agreement contained an exculpatory clause whereby the telephone company assumed "all risks of loss or damage of any nature to said wire line crossing and appurtenances, however caused," and released "the Railway Company from all liability on account thereof." After the telephone lines were installed, a train

derailed as a result of the railway company's negligence, and the lines were damaged. Ruling that the telephone company was not entitled to recover for the damage, we upheld the exculpatory clause against the telephone company's contention that the clause was invalid under Code § 56-119.

Tracing the history of § 56-119, we said that the statute does not prohibit a transportation company, when acting in its private capacity and not as a common carrier, from exempting itself by contract from liability for tort negligence. We stated further that, because transactions involving railroad property "seldom relate to any of the duties imposed by law upon a railroad 'as a common carrier,'" the railway company was acting in its private capacity when it contracted with the telephone company. Accordingly, we concluded, the railway company "could impose any conditions that it desired and which Telephone Company was willing to accept." 216 Va. at 865, 224 S.E.2d at 322.

In the course of the opinion, however, we placed this important caveat upon our holding:

"In the agreement involved here C & O did not assume thereby to relieve itself of any of its essential duties as a common carrier or as a quasi-public corporation. The signing of the lease had no bearing on these duties and liabilities. Its only effect was to relieve the railroad from any liability that might attach to it by reason of the construction, maintenance and operation by Telephone Company of the wire line across the railroad's right-of-way." 216 Va. at 865, 224 S.E.2d at 322.

With this language, and in the absence of any carrier-shipper relationship in the *C. & O. v. Telephone Co.* case, the decision cannot be considered authority for the proposition, asserted by N&W in the present appeal, that an agreement entered into by a transportation company in its private capacity is determinative of its liability for subsequent injury to one to whom the company then owes a duty as a common carrier. While the damage in the *C. & O. v. Telephone Co.* case resulted from negligence occurring while C. & O. was operating as a *transportation company*, the damage did not result from the breach of any duty C. & O., as a *common carrier*, then owed the telephone company.

Under Code §56-119, this distinction is crucial. The statute is directed to a transportation company's liability as "a common carrier," and it encompasses the neglect or misconduct of such a company "as a common carrier." Under the plain language of the statute, although a transportation company may occupy a private status at the time it attempts to relieve itself from liability, the attempt is ineffectual with respect to subsequent injury to one to whom it owes a duty as a common carrier.

The *C. & O.* v. *Telephone Co.* opinion answers N&W's argument that the agreement involved in the present case is not invalid because it provides for indemnification rather than exemption. The agreement in that case contained both exemption and indemnification features, and, in the course of our opinion, we stated:

"The general rule on the effect of an agreement by which a lessee or licensee agrees to exempt *or indemnify* a railroad against liability to a third party or to himself for damage caused by that railroad's negligence is stated in 14 A.L.R.3d, at 453 (1967), as follows:

"'The rule is well established that a railroad acting as a common carrier may not contract for *indemnity* against its own tort liability when it is performing either a public or quasi-public duty such as that owing to a shipper, passenger, or servant, and that such contracts are void as against public policy . . . .'" 216 Va. at 862, 224 S.E.2d at 320 (emphasis added).

In short, Code § 56-119 prohibits any attempt, either direct or indirect, by a transportation company to relieve itself from liability to one to whom it owes a duty as a common carrier. *C.&O. Ry. Co.* v. *Osborne*, 154 Va. 477, 501, 153, S.E. 865, 871 (1930).*

In the present case, as the companion *Chrisman* opinion demonstrates, Chrisman's injury resulted from the breach by N&W of its duty as a common carrier to furnish for unloading by the employ-

---

*It has been recognized that a common carrier is not prohibited from "entering into insurance contracts with duly licensed insurance companies to indemnify [the carrier] against its losses." *The Pennsylvania Railroad Co.* v. *Kent*, 246 Ind. 101, 102, 202 N.E.2d 893, 894 (1964). Nothing in the opinion handed down today should be construed as either approval or rejection of this proposition.

ees of Southern States a car reasonably free from discoverable defects. To avoid liability for this breach, N&W attempts to interpose the indemnification provision contained in its lease agreement with Southern States. This is precisely what Code § 56-119 prohibits. Accordingly, N&W's attempt must fail.

For the reasons assigned, the judgment of the trial court will be reversed, and final judgment will be entered here in favor of Southern States.

*Reversed and final judgment.*