### Richmond

NORFOLK AND WESTERN RAILWAY COMPANY

V.

DONALD F. BAKER

January 20, 1984

Record No. 811279

Present: All the Justices.

*T.C. Bowen, Jr. (T.C. Bowen, Jr., P.C.*, on briefs), for appellant.

*Carl E. McAfee (Cline, McAfee and Adkins*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Donald F. Baker brought this action against Norfolk and Western Railway Company (the Railway), to recover damages for injuries he sustained when a door on one of the Railway's boxcars

fell on him as he was unloading flour consigned to his employer. A jury trial resulted in a verdict in favor of Baker in the sum of $118,000, on which the trial court entered judgment. On appeal, the Railway argues that the evidence fails to show negligence on its part that was a proximate cause of Baker's injuries.

The evidence at trial showed that Burlington Northern Railroad, the initial carrier, delivered a boxcar loaded with flour to the Railway in Chicago; the Railway, in turn, transported the car to Richlands, where the consignee, Richlands Farm Bureau, was to unload it. The car was equipped with a "plug-type" door, weighing 800 to 1600 pounds, which was secured by a central locking device and sealed to protect the shipment in transit. The door had four rollers, two at the top and two at the bottom. The top rollers moved within an enclosed metal guide. The bottom rollers, enclosed in metal housings, moved along a track. On each side of the door, a vertical operating rod connected the top and bottom rollers. Each end of the operating rod was equipped with an "eccentric arm" where the rod connected with the rollers. By means of the handles on this equipment, the door could be moved out several inches from the side of the car when the locking device was released. The door could then be pushed on its rollers parallel to the side of the car, thereby uncovering the opening so that the cargo could be unloaded. The guide at the top held the door in place in a vertical position.

Baker, the principal witness on his own behalf, testified that he was the manager of the Richlands Farm Bureau store. On November 17, 1978, about 9:00 a.m., he was notified of the arrival of the car containing the shipment of flour. He went in a truck with two other employees of the store to unload the car. Parking his truck beside the car, Baker removed the seal on the car door. Two of the men pulled the door out; all three then pushed it sideways to clear the opening, unloaded a truckload of flour, pushed the door back into position opposite the opening and then into the opening, and locked it. Baker, who had opened this kind of door since 1950 or 1951, found that this particular door was in general no harder to open than those of other cars.

After taking the first truckload of flour back to the store, the men returned to the car for another load. This time, however, the door would not slide sideways after they had pulled it out of the opening. Despite the fact that the men struggled with it for 20 to 25 minutes, they could not get the door past what Baker called a

"flat spot." Backing the truck against the edge of the door, Baker moved the door six to ten inches, after which the men were able to push it sideways manually until the opening was cleared. They removed another truckload of flour and pushed the door·back across the opening, but as they proceeded to operate the levers to move it into the opening and secure it flush against the side of the car, the door broke loose from the top and fell on Baker.

Baker testified that it was standard procedure to use "a chain, and a piece of wood, and a bumper" to open boxcar doors. He pushed the right rear of his truck against the left edge of the door at a slight angle. He put either a piece of wood or the bumper against the door. The truck did not touch the door's vertical operating rods, according to Baker. He did not know whether the rods were bent before the door fell, but he said, "The door looked alright to me." As he lay on the ground after the door fell on him, he noticed that the door's top rollers were badly worn. He also noticed that only one roller with its housing was on the bottom track.

At the conclusion of the presentation of Baker's evidence, the Railway moved to strike the evidence on the ground that it failed to show negligence of the Railway that was a proximate cause of the accident. The trial court overruled the motion on the ground that the evidence was sufficient to raise a jury question whether the Railway had exercised ordinary care to inspect the car.

A witness for the Railway, William F. Yost, was the brakeman on the Railway's train crew that set off the boxcar at Richlands. He testified that, as part of his assigned duties, he immobilized the car and inspected it before leaving it to be unloaded by the consignee. There was a door on each side of the car. Yost inspected these doors and found that each was closed, locked, and sealed. A seal cannot be affixed, Yost said, unless the locking device in the center of the door is completely locked. Yost testified that there were no defects on the doors, and if he had discovered broken seals or any other defects, he would not have left the car for the consignee.

R. L. Austin, employed as a master mechanic by the Railway, testified that on November 17, 1978, after the accident, he inspected the car for defects. When he arrived, the door that fell on Baker was lying on the ground. Austin observed that one of the door's operating rods was bent at the top. He believed the rod was bent either by the use of undue force such as a truck or crane or

by the door's fall to the ground. Austin said that if the rod were bent while the door was still attached to the car, the rod would "allow" the door to become disengaged from the top roller guide and fall. He also stated that an operating rod bent as this one was bent would be hard to operate. According to Austin, normally one person can open and close a boxcar door, and it is not advisable to use motorized equipment to push a door that will not move.

The trial court, adhering to its previous ruling that there was a jury issue whether the Railway exercised ordinary care to inspect, denied the Railway's motion to strike the evidence after all the evidence had been presented. For the same reason, the court denied the Railway's motion to set aside the jury verdict in favor of Baker and entered judgment on the verdict.

The trial court relied on *N. & W. Railway* v. *Chrisman*, 219 Va. 184, 247 S.E.2d 457 (1978) in ruling that the question of liability was for the jury. In *Chrisman*, a boxcar door fell on a consignee's employee as he was opening it with a crank-pulley device known as a "come-along." Subsequent investigation of the boxcar revealed a "bulged out" section extending six to twelve inches along the upper door guide. This section was quite rusty, and it appeared to have been repaired in the past. Citing *Hagan* v. *Hicks*, 209 Va. 499, 504, 165 S.E.2d 421, 425 (1969), and *Hall* v. *Hockaday*, 206 Va. 792, 797, 146 S.E.2d 215, 218 (1966), we observed that "the existence of the defect after the accident tended to show that the defect preexisted the accident," especially in view of the rusty condition of the metal. 219 Va. at 188, 247 S.E.2d at 459. Finally, since the defect was apparent to railroad employees after the accident, the conclusion was justified that it would have been fairly obvious upon a reasonable inspection before delivery to the consignee. 219 Va. at 188, 247 S.E.2d at 460. We held that it was a jury question whether the railroad company had breached its duty to furnish a car reasonably free from discoverable defects. *Id.* at 188-89, 247 S.E.2d at 460.

The present case is distinguishable from *Chrisman* in several respects. In *Chrisman*, the railroad company was the initial and intermediate carrier as well as the delivering carrier. As the initial carrier, it owed to the consignee's employee, who would unload the car, the duty to exercise ordinary care to furnish a car which could be unloaded with reasonable safety. *Id.* at 187-88, 247 S.E.2d at 459. As the delivering carrier, it had the duty to inspect the car to see if it were reasonably safe to be unloaded. If

the carrier finds a defect in this inspection, it must repair the defect or warn the consignee's employees of it. *Id.* at 188, 249 S.E.2d at 459; *Veale* v. *Railway Company*, 205 Va. 822, 826-27, 139 S.E.2d 797, 800 (1965). The carrier's inspection must be thorough enough to discover any "fairly obvious" defect which is a likely source of danger. *Chrisman*, 219 Va. at 188, 247 S.E.2d at 459. In the present case, the Railway's duty was only that of the delivering carrier.

In *Chrisman*, we held that evidence of the existence of a defect after an accident tends to show that the defect existed before the accident. *Id.* There was uncontradicted evidence that the door which fell on Baker had a bent operating rod after the accident. Yost, however, testified that there were no defects on the car when he inspected it, and Baker himself said that the door appeared "alright" to him. Therefore, the evidence in this case negates any inference that the rod was bent before Baker and the other two men began to unload the car. For the same reason, although Baker testified that there was only one roller on the bottom track after the accident, his testimony does not justify the conclusion that this condition existed before the unloading began. A photograph introduced in evidence by Baker showed that only one lower roller, with its housing, was on the car immediately after the accident. If this roller, with its housing, had been missing before the accident, however, its absence would have been readily apparent to Yost and to Baker before the door fell. In summary, although evidence of the existence of a defect after an accident may tend in the absence of the other evidence to show that the defect existed before the accident, the facts in the present case do not justify such an inference.

Moreover, there was no evidence that any defect in the door's top rollers, which Baker said were worn, could have been discovered by a reasonable inspection. The evidence showed that these rollers were enclosed in a metal roller guide, and there was no evidence that they could have been seen upon a visual inspection of the car's exterior.

The most important distinction between this case and *Chrisman* is that before this accident, Baker and his fellow employees opened the car door, moved it aside, unloaded enough flour to fill a truck, and closed the door again without incident. The conclusion is inescapable that there were no fairly obvious

defects in the door when it was delivered to the consignee for unloading.

■ We hold that there was no evidence of primary negligence on the part of the Railway that was a proximate cause of the accident, and that the trial court erred in submitting the question to the jury. Since this holding is dispositive of the appeal, we will not consider a subsidiary question of evidence. We will reverse the judgment of the trial court and enter judgment for the Railway.

*Reversed and final judgment.*