David G. HAYDEN, Plaintiff–Appellant,

v.

The KROGER COMPANY, Defendant–Appellee.

No. 93–1666.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1993.

Decided Feb. 22, 1994.

---

**ARGUED:** Dennis P. Brumberg, LU-TINS & SHAPIRO, Roanoke, Virginia, for Appellant. Melissa Warner Scoggins, Gentry, Locke, Rakes & Moore, Roanoke, Virginia, for Appellee. **ON BRIEF:** John C. Johnson, Gentry, Locke, Rakes & Moore, Roanoke, Virginia, for Appellee.

Before RUSSELL and HALL, Circuit Judges, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

CLARKE, Senior District Judge:

In this appeal, we must determine whether the district court correctly ruled that a truck driver who injured himself while unloading goods at a warehouse was the warehouse owner's statutory fellow employee under the Virginia Workers' Compensation Act, Va. Code Ann. § 65.2–100, *et seq.* (Michie Repl. Vol.1991), and was therefore barred from bringing a personal injury action against the owner. Because we agree with the district court's determination, we affirm the district court.

### I.

David G. Hayden ("Hayden") is an independent owner and operator of a truck used for the long-haul transfer of goods. A dispatcher from Universal Am Can contacted Hayden and inquired whether Hayden was interested in hauling a load of canned goods from Bonner Springs, Kansas to a distribution center owned by The Kroger Co. ("Kroger") in Salem, Virginia for a flat fee.

Kroger is in the retail grocery business. Kroger operates a distribution center in Salem, Virginia which receives goods, stores them, and then reships the items, as needed, to Kroger stores throughout the region. Independent trucking contractors deliver 80% of the goods to the Kroger distribution center. Kroger employees, operating Kroger trucks, deliver the remaining 20% of all goods to the facility. Except for the fact that Kroger employees do not need to make an appointment when they unload their trucks, Kroger drivers follow the same standard operating procedures as the independent truck drivers when they unload trucks at the distribution facility.

An independent truck driver entering the Kroger distribution center has three options for unloading his truck: (1) the driver may unload the truck himself; (2) the driver may hire a "lumper" to unload the truck; (3) the driver may hire Kroger to unload the truck. Lumpers are independent contractors who gather outside the distribution center and solicit incoming independent drivers for work unloading their trucks. Lumpers work directly for the truck drivers and are not on the Kroger payroll.

Pursuant to its agreement with Universal Am Can, on December 20, 1989, Hayden transported a load of canned goods from Kansas to the Kroger's Salem, Virginia distribution center. When Hayden arrived at the facility, Kroger personnel, in accordance with Kroger standard procedure, instructed Hayden how to unload his palletted cargo and where to stack the goods. Following his arrival, a lumper approached Hayden seeking to unload his truck. Because he could not afford to pay the lumper, Hayden unloaded his truck himself.

As Hayden was unloading the goods, he noticed a floor sweeper coming toward him in the aisle where he had been standing. Hayden was not aware that the sweeper sprayed water on the floor as it cleaned. As he threw an empty pallet on the floor, Hayden slipped on a wet spot and fell. Hayden landed on his left shoulder and hit his head on the concrete floor. The pallet landed on top of him.

Hayden filed a diversity negligence action against Kroger on July 18, 1991. On March 1, 1993, Kroger filed a motion for summary judgment alleging that the exclusive remedy provisions of the Virginia Workers' Compensation Act barred Hayden's tort action. On

May 5, 1993, the district court granted Kroger's summary judgment motion and dismissed the case. This appeal followed.

## II.

■ This court reviews the district court's decision *de novo*, applying the same standard as that applied by the district court when it decided whether summary judgment was appropriate. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1127–28 (4th Cir.1987). Virginia law governs this diversity action. This Court must determine whether the district court erred in applying Virginia substantive law. *See Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166–67 (4th Cir.1988).

The Virginia Workers' Compensation Act, Va.Code Ann. § 65.2–100 *et seq.* (Michie Repl.Vol.1991) ("the Act"), precludes an employee from bringing an action in negligence against his employer for an injury sustained during the course of his employment. Va. Code Ann. § 65.2–307; *see also Veale v. Norfolk & Western Ry. Co.*, 205 Va. 822, 825, 139 S.E.2d 797, 799 (1965). The Act also bars a personal injury action against a party, who is not a plaintiff's employer, if that party is deemed to be a "statutory employer" of the plaintiff. *See* Va.Code Ann. § 65.2–307; *Best v. Washington Metro Area Transit Auth.*, 822 F.2d 1198, 1200 (D.C.Cir.1987).

Section 65.2–302 of the Act delineates the criteria for determining whether a party should be considered a plaintiff's statutory employer. That section provides, in relevant part:

When any person (referred to in this section as "owner") undertakes to perform or execute any work which is part of his trade, business, or occupation and contracts with any other person, (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Va.Code Ann. § 65.2–302(A). Thus, according to the Act, contractors, subcontractors, and all workers who are engaged in the trade business, or occupation of the owner of a project are deemed to be that owner's statutory employees. The Supreme Court of Virginia has further clarified the statute by holding that an activity is part of the trade, business or occupation of the owner if the activity "is, in that business, normally carried on through employees rather than independent contractors." *Shell Oil Co. v. Leftwich*, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972).

■ In the present case, the parties dispute whether Hayden was Kroger's statutory employee. Kroger argues that Hayden was a statutory employee because he had been performing an element of Kroger's business when he unloaded goods from his truck into the distribution center. Kroger points out that it employed workers who performed this exact function at its distribution center.

In opposition, Hayden contends that he was not engaged in any form of Kroger's business when he unloaded the cargo from his truck. Hayden argues that the unloading of trucks at the distribution center is not a function normally performed by Kroger employees. Hayden points out that Kroger only performed this function 20% of the time.

In support of his position, Hayden relies on *Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107 (1969). In *Burroughs*, the plaintiff was an employee of a trucking company who was injured while delivering sheetrock to a construction site. The Supreme Court of Virginia held that the reason the Act did not bar Burroughs' suit was because a laborer who merely delivers materials to a construction site is not engaged in the trade, business or occupation of a builder. *Burroughs*, 210 Va. at 100, 168 S.E.2d at 108–09.

The Virginia Supreme Court has not been called upon to decide whether a truck driver is the statutory employee of a warehouse owner when he unloads goods at the facility. However, *Conlin v. Turner's Express, Inc.*, 229 Va. 557, 331 S.E.2d 453 (1985), provides us with guidance in this matter. In *Conlin*, the plaintiff was an employee of the Ford Motor Company who had been injured while unloading Ford parts and machinery onto a

trailer truck owned by Turner's Express. Turner's Express was a common carrier hired by Ford to transport Ford parts and machinery from one assembly plant to another. Conlin sued Turner's Express to recover for injuries she alleged were caused by Turner's Express' negligence. The trial court found that Conlin's suit against Turner's Express was barred because, under the Act, Conlin's sole remedy was against her employer Ford. On appeal, the Virginia Supreme Court affirmed the dismissal of Conlin's suit, holding that the transportation of cargo between Ford's assembly plants was an essential element of Ford's business. *Conlin,* 229 Va. at 559, 331 S.E.2d at 455; *see also Floyd, Administratrix v. Mitchell,* 203 Va. 269, 273, 123 S.E.2d 369, 372 (1962) (transporting pipe to customers was part of the business of a pipe manufacturer.).

It is clear that the determination of whether a subcontractor is an owner's statutory employee is a fact specific inquiry. In the present case, the record demonstrates that Kroger employees transported, loaded and unloaded canned goods at the distribution center at least 20% of the time. This figure does not include the amount of loading and unloading accomplished by Kroger employees in Kroger's other warehouses and stores. It is essential to Kroger's business that such loading continuously take place. Furthermore, Kroger owns its own fleet of trucks and employs drivers to transport, load and unload goods at various Kroger-owned facilities.

The present facts are similar to those in *Conlin,* where the Virginia Supreme Court held that the delivery of parts and machinery to automobile factories was an essential element of Ford Motor Co.'s business. In the present case, the plaintiff was transporting goods to a distribution center, an activity which Kroger normally performs as part of its grocery business. Hayden's reliance on *Burroughs* is misplaced. *Burroughs* merely held that a delivery person is not engaged in

the construction business. Thus, we agree with the district court that the transportation, loading and unloading of canned goods is an essential function of Kroger's business. We further agree that Hayden became Kroger's statutory employee when he performed those duties at the time of his injury. Accordingly, the district court's decision to dismiss Hayden's suit is

*AFFIRMED.*

K.K. HALL, Circuit Judge, dissenting:

I cannot agree that Hayden, simply a delivery person, was Kroger's statutory employee. *Burroughs* is directly on point. The *Burroughs* court, contrary to the majority's assertion, did not merely hold that "a delivery person is not engaged in the construction business"; it held that persons who "function solely as suppliers and deliverers of goods" are *never* barred from bringing a tort action against the purchasers of those goods. *Burroughs,* 168 S.E.2d at 108–09.

The deliveryman in *Burroughs* not only had to deliver sheetrock to various homes at the subdivision construction site, but was also required to enter the individual homes and place specified amounts of sheetrock in designated rooms. Nevertheless, the *Burroughs* court held that the acts required to be performed by the deliveryman did not "transcend" delivery. The deliveryman's conformance to the contractor's delivery specifications was but "the final act of delivery, not an act of construction," and therefore the deliveryman was not engaged in the contractor's "trade, business or occupation." *Id.*

The clear lesson of *Burroughs,* ignored by the majority, is that a delivery person's conformance to a purchaser's rigid delivery specifications does not transform the deliverer into the purchaser's employee, so long as the deliverer does not transcend the final act of delivery. Hayden merely unloaded his truck and made a delivery; he did nothing that could arguably be construed as transcending that delivery.

*Conlin* does not support the majority's position. The plaintiff in *Conlin* was a Ford

employee who was injured while she was loading the defendant's truck with parts and machinery to be transported to another Ford plant. Based on those unique facts, the *Conlin* court held such transportation to be an "essential element" of Ford's trade, business or occupation. *Conlin*, 331 S.E.2d at 453. In fact, the court in *Conlin* was careful to distinguish *Burroughs* on the basis that *Burroughs* involved a "mere delivery." *Id.* at 455–56.

We face nothing more than a mere delivery in this case. The majority cannot credibly argue that Hayden's delivery—or all deliveries—are "essential elements" of Kroger's business inasmuch as the Supreme Court of Virginia has already decided the issue in the negative. "The gathering of material is of course essential to the construction of a building. So in a sense each supplier of material is engaged in the general contractor's trade, business or occupation. But a line must be drawn...." *Burroughs*, 168 S.E.2d at 108. The Supreme Court of Virginia has drawn that line, and it does not favor Kroger. Kroger's business is not the delivery of goods, but the selling of them.

I respectfully dissent.