DAVIS, Circuit Judge,
dissenting:
The majority concludes that, “In short, the evidence in this record, viewed in the light most favorably for Jarmak, does not establish as a matter of law that Ramos met her duty as an innkeeper to inspect the hammock before the Jarmaks rented the cabin.” Ante at 295. In so holding, the majority has asked and answered the wrong question. The issue in this case is not whether “Ramos met her duty as an innkeeper to inspect the hammock before the Jarmaks rented the cabin.” Mr. Jar-mak, as the plaintiff, bears the risk of non-persuasion, i.e., the burden of proof, on all of the elements of his damages claim. Thus, as the district court recognized, the real issue is whether Mr. Jarmak has of *296 fered evidence on the basis of which a reasonable jury could rationally find by a preponderance of the evidence that the condition of the hammock was such that a reasonable inspection[1] would have disclosed such weakness in the ropes that it would be unlikely to support a man, such as Mr. Jarmak, weighing more than 230 pounds. Although the majority asserts that Ms. Ramos was not an insurer, in light of the paucity of evidence in this record of what a “reasonable inspection” would have revealed concerning the condition of the hammock before the ropes broke, that is precisely what the majority’s holding makes her.
Even viewed in the light most favorably to Mr. Jarmak, the evidence of Ms. Ramos’ breach of duty, at best, is in equipoise.[2] If this case is decided by a jury, the jury will find for Ms. Ramos if it acts rationally. If instead it finds for Mr. Jarmak, its verdict will amount to little more than a flip of a coin successfully (and luckily) called by Mr. Jarmak.
The district court did not err in granting summary judgment.[3] Accordingly, and respectfully, I dissent.

. We can be certain that Mr. Jarmak will insist that the district court must instruct the jury that only a "hands on" inspection of the hammock (whatever that means) could discharge Ms. Ramos’ duty. The district court should of course resist any such instruction as unsupported by any extant Virginia appellate case.

. [T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge’s inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict' — whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (second bracket and emphasis in original; quotation marks and citation omitted).

.The majority’s reliance on a host of Virginia cases never cited by Mr. Jarmak to the district court or to this Court admittedly makes for a stronger argument in favor of reversal than that made by Mr. Jarmak. Nevertheless, all of those cases are readily distinguishable, and obviously so. For example, although the majority recites that the metal railing holding in the boxcar door that fell off and caused injury in Norfolk & W. Ry. Co. v. Chrisman, 219 Va. 184, 247 S.E.2d 457 (1978), "among other things, appeared 'awful rusty,’ ” ante at 295, n. 6, the "other thing[ ]" referred to included the fact that, ”[t]he metal in this and a larger adjacent area, ‘at some time or another,’ had been 'heated and straightened.’ " Id. at 459. Thus, the jury was entitled to infer that the defendant railroad employed an instrumentality that it (or its predecessor) knew was likely in an altered and possibly a weakened condition, calling for regular inspections.