**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1767

MICHAEL WARREN HOLT,

Plaintiff - Appellant,

v.

TED HULL, individually and in his official capacity; JESSICA MIDDLEBROOK, individually and in her official capacity; HANNAH HODGES, individually and in her official capacity,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  David J. Novak, District Judge.  (3:24-cv-00243-DJN)

Argued: May 9, 2025                                  Decided:   July 22, 2025

Before WILKINSON, GREGORY, and RICHARDSON, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Jesse Andres Baez, BROOKS & BAEZ, Richmond, Virginia, for Appellant. Jeff W. Rosen, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees.  **ON BRIEF:**  Lisa Ehrich, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael Holt committed unrelated state offenses in two separate Virginia jurisdictions. Then he sought to use time credits earned in pre-trial confinement for the first offense to satisfy the second offense's sentence—before the first charges had been resolved. But he had no cognizable right to do so. We therefore affirm the district court's grant of summary judgment.

In February 2022, Middlesex County charged him with theft of oysters and trespass. He was released on bond the same day. Seven months later, Gloucester County charged him with strangulation and drug possession. Gloucester arrested Holt on September 30, first holding him in its county prison before transferring him to the Northern Neck Regional Jail on October 6.

On October 17, Holt was convicted of the Middlesex County oyster-theft and trespass charges, receiving a one-month sentence on each charge. But he couldn't begin serving the Middlesex sentence because he remained in Gloucester's custody (in Northern Neck Regional Prison).

In March 2023, after he had been confined by Gloucester at Northern Neck for six months, Holt entered a plea agreement that deferred the disposition of Gloucester's strangulation and drug-possession charges. Holt agreed to plead guilty to the two charges. But as long as he complied with the conditions in the agreement (such as submitting to random drug tests) then Virginia would reduce the strangulation charge to domestic assault and battery and the drug-possession charge to possession of drug paraphernalia. And when that happened, Holt would receive a sentence of twelve months with six months suspended

2

on the domestic-assault-and-battery charge (along with twelve months with eight months suspended on the drug-paraphernalia charge).

Practically, this meant that Holt wouldn't spend any more time in jail. He would receive a six-month active sentence (twelve months minus the suspended six months). But he had served six months in pre-trial detention (October 2022 – March 2023) before entering the plea agreement. And that time would count against the six-month active sentence. Va. Code Ann. § 53.1-187. So after a year of good behavior, Holt would walk out of the courthouse without having to serve another day on the Gloucester charges.

Of course, if Holt didn't abide by the agreement's conditions, then the charges wouldn't be reduced, he wouldn't receive the agreed-upon sentence, and he would face more time in prison. The charges, therefore, weren't resolved in March 2023, nor were they suspended; rather prosecution was deferred, and the charges remained active until March 2024. Only then would they be resolved.

Holt was granted bond on March 22 after the plea agreement, though it appears that the bond was not executed until April 3. While Holt had a plan for the Gloucester offenses, he still needed to serve his one-month Middlesex oyster-and-trespass sentence. So Middlesex County picked him up after the plea agreement (March 23) and detained him for a month, until April 22, 2023.

3

Holt's version of the story is that he remained in Gloucester's custody until his bond was executed on April 3.[1]  And so he effectively served 19 days in Middlesex's custody (April 3 – April 22).  He now claims that these nineteen days were "dead time" that he should not have been in custody.

Untangling why he thinks this takes a few steps.  First, Middlesex County viewed the month he served (March 23 – April 22) as satisfying its one-month sentence for the oyster-theft and trespass convictions.  Second, Holt agrees that he "owed" Middlesex a month.  But third, Holt argues that one of the six months that he spent in Gloucester's custody should have counted against Middlesex's sentence.  And if it had, then he would have already served time that satisfied the Middlesex one-month sentence.  And so, in Holt's telling, any extra time that he spent in Middlesex's custody was unlawful.

Holt's theory depends on the claim that Gloucester was required to have transferred credit for the pre-trial detention to Middlesex.[2]  He is wrong.

---

[1] We lay out—but do not credit—Holt's version of the story here only to explain his argument.  The Eastern District of Virginia Local Rules require a party moving for Fed R. Civ. P. 56 summary judgment to submit a list of undisputed material facts.  Local Civ. R. 56(B).  The opposing party's brief in response to this motion then is required to list material facts it disputes.  *Id.*  But if the opposing party doesn't do so, the court "may assume" the moving party's list of facts are undisputed.  *Id.*; J.A. 72.  Holt did not dispute any of the Defendants' undisputed facts.  So the undisputed facts—not Holt's version—govern.

[2] In Virginia, each prison determines its own policy for whether credit for time served at that facility is transferred to another institution.  Each jail houses inmates from a designated geographical area and passes the expenses of doing so along to the jurisdictions that support it.  When an incarcerated person receives a time credit, it reduces the days that the institution needs to feed and house them, decreasing the costs of confinement.  So it appears that some prisons retain time credits to be applied to sentences in their facility (thereby reducing the costs to their supporting jurisdictions) until an inmate has completed (Continued)

4

Recall that Holt's Gloucester prosecution was deferred and so the charges remained active pending a year of good behavior. If he complied with the terms of the agreement— which the docket suggests he did—then he would receive an active six-month sentence. And the period that Holt spent in pre-trial detention would count against that time. Indeed, the agreement appears to contemplate that the six months of pre-trial detention would satisfy the six months of active sentence, so that in March 2024 Holt would effectively receive a time-served sentence.

If, in contrast, Holt violated the terms of his agreement, then he may have received a longer sentence. But in either instance, his time spent in pre-trial detention would count against the sentence imposed in the Gloucester case. We know of no principle requiring one jurisdiction to transfer credit for pre-trial detention to another jurisdiction for an unrelated sentence when that detention would apply to a future sentence in the first jurisdiction.[3]

Holt suggests that he gets help from a state statute addressing credit for time spent in pre-trial detention:

> Any person who is sentenced to a term of confinement in a correctional facility shall have deducted from any such term all time actually spent by the person in a state or local correctional facility awaiting trial . . . . Such credit for time *shall include any time spent in pretrial confinement or detention on separate*, dismissed, or nolle prosequi *charges that are from the same act as*

___

their sentence in that facility, and only after that has occurred will these prisons transfer the credits to another prison.

[3] Holt points to *Durkin v. Davis*, 538 F.2d 1037 (4th Cir. 1976). But *Durkin* does nothing to establish a right to use credits from pre-trial detention on one set of unresolved charges to satisfy a sentence on an unrelated criminal sentence.

*the violation for which the person is convicted and sentenced to a term of confinement.*

Va. Code Ann. § 53.1-187 (emphasis added). "[T]he paramount principle" of statutory interpretation used by Virginia courts is "to interpret the statute as written." *Miller & Rhoads Building, L.L.C. v. City of Richmond*, 790 S.E.2d 484, 542 (Va. 2016) (cleaned up). And here the text is clear: Time spent waiting for trial on separate charges must be credited only when the separate charges arise from the "same act." *See Commonwealth v. Batra*, 106 Va. Cir. 361, *2 (Va. Ct. App. 2020) ("[Under § 53.1-187, credit] can only be applied to sentences for convictions directly stemming from charges the defendant is awaiting trial for."). So whatever interest the statute may create in pre-trial confinement time credits does not extend to using them on a sentence, like Holt's, that does not arise from the same act. *Cf. Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974); *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Holt also claims that the prison officials were grossly negligent by failing to transfer credit. But to bring a successful negligence claim, a plaintiff must show that the defendant breached a legal duty. *Blue Ridge Serv. Corp. of VA v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006). Since he hasn't shown any duty to transfer the credit, he has not established that the officials were negligent. *See Veale v. Norfolk & W. Ry. Co.*, 139 S.E.2d 797, 825 (Va. 1965).[4]

For these reasons, the district court's grant of summary judgment against Holt is

*AFFIRMED.*

---

[4] Holt makes or gestures at several other claims. None warrant discussion.