COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Elder
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION* BY
v.          Record No. 0963-98-3     JUDGE LARRY G. ELDER
                                        SEPTEMBER 8, 1998
CHARLIE WILLIAM GILBERT

              FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                     William N. Alexander, II, Judge

              Marla Graff Decker, Assistant Attorney
              General (Mark L. Earley, Attorney General, on
              brief), for appellant.

              Glenn L. Berger (Berger & Thornhill, on
              brief), for appellee.


        Charlie William Gilbert (defendant) was indicted for driving

"so as to endanger the life, limb, or property of another, while

an order declaring him to be an habitual offender and prohibiting

such operation was in effect, a second or subsequent offense," in

violation of Code § 46.2-357.  He moved to suppress on the ground

that the police officer lacked legal justification for the stop,

which led to the officer's discovery of his habitual offender

status.  The trial court granted the suppression motion, and the

Commonwealth appeals that ruling pursuant to Code § 19.2-398.  On

appeal, the Commonwealth argues that the officer had at least

reasonable and articulable suspicion to stop the automobile.  We

disagree with the Commonwealth and affirm the trial court's

        *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

ruling.

## I.

### FACTS

After dark on October 10, 1997, Officer David Cash observed that the right front marker light on defendant's automobile was not burning. All other lights appeared to be illuminated. Cash described the non-functioning light as "an amber light that works as [both] a marker light and a signal light." He had no opportunity to observe whether the right front turn signal was operational. Cash previously had received a "report that the person driving a vehicle similar to [defendant's] was . . . an habitual offender."

Cash testified that he believed "the Code [requires] . . . all factory lighting equipment [to be operational]" and that he intended to stop defendant "because [of the] . . . [marker] light out on the vehicle." After turning his car around, Cash followed defendant for about a quarter of a mile, and during that time, defendant accelerated to "the range of 40 miles per hour" in a thirty-five mile-per-hour zone. Officer Cash then activated his lights and pulled defendant over. Although the marker light on defendant's car was not burning, the lens covering the light did not appear to be broken, and Cash did not test the light to see if the turn signal portion was operational.

As a result of the stop, defendant was indicted for driving after having been declared an habitual offender, second or

subsequent offense, and he moved to suppress all evidence on the ground that the stop was unreasonable under the Fourth Amendment. He stipulated that, if the trial court held the stop legal, he was guilty of the charged offense.

After hearing argument and receiving legal memoranda from counsel, the trial court ruled that Officer Cash lacked legal authority for the stop. In granting defendant's motion to suppress, it observed:

> [W]hen you go back and read the Code Section[,] it's almost impossible to determine whether that marker light is required. It looks like to me, that being the case, it's not required, but I don't say that with a whole lot of assurance except I can find nothing there that requires . . . this vehicle to have a marker light, and that being the case I don't think the officer had a right to stop this vehicle. It's clear he would have had a right to stop the vehicle if the turn signal was out, but the officer did not . . . test the turn signal to see if the turn signal worked. There was no evidence that the turn signal did not work. The only evidence in this case . . . was that the marker light on the side of the vehicle was out, and . . . the Court finding that is not required equipment, I don't think he had a right to stop the vehicle . . . .

II.

ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights. See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989); Alexander v. Commonwealth, 19 Va. App.

- 3 -

671, 674, 454 S.E.2d 39, 41 (1995). On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, we review de novo the trial court's application of defined legal standards to the particular facts of the case. See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699.

A police officer may conduct an investigatory stop of a motor vehicle if he has "articulable and reasonable suspicion" that the operator is unlicensed, the vehicle is unregistered, or the vehicle or an occupant is otherwise subject to seizure for violating the law. See Murphy v. Commonwealth, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989) (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)). "Motor vehicles operating on the highways of this State are required to comply with the statutes relating to lighting equipment in effect at the time of their operation." Hall v. Hockaday, 206 Va. 792, 798, 146 S.E.2d 215, 219 (1966).

Therefore, a police officer who has "articulable and reasonable suspicion" that the lighting equipment on a particular vehicle does not comply with relevant statutes may conduct an investigatory stop of that motor vehicle and its driver in order to confirm or dispel his suspicion.

The Fourth Amendment requires only that an objectively reasonable basis exist for an investigatory stop. See, e.g., Whren v. United States, 517 U.S. 806, 812-13 (1996). "'[T]hat the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" Id. at 813 (quoting Scott v. United States, 436 U.S. 128, 138 (1978)) (emphasis added); see also Ohio v. Robinette, 519 U.S. 33, 38-39 (1996); Limonja v. Commonwealth, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 479-80 (1989) (en banc). The trial court made clear that it understood this standard, observing that "you don't go into the officer's head . . . . [I]f he's got articulable suspicion . . . , the fact that he has . . . another motive to stop the vehicle . . . doesn't invalidate the stop."

The Commonwealth advances three theories in support of its contention that Officer Cash's stop of defendant was objectively reasonable. It contends that Cash had at least reasonable suspicion to believe that (1) the non-functioning marker light violated the Code; (2) defendant was speeding in violation of the

Code; and (3) defendant's right front turn signal light was defective in violation of the Code.

## A. FRONT MARKER LIGHT

The trial court held that, because "the marker light [was] . . . not required equipment," its failure to operate did not provide a basis for the stop. We agree.

Code § 46.2-1003 makes it "unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment mentioned in § 46.2-1002 which is <u>defective</u> or in an <u>unsafe condition</u>." (Emphasis added). Included in the equipment mentioned in Code § 46.2-1002 is "any [motor vehicle] lighting device . . . <u>for which approval is required by any provision of this chapter</u>." (Emphasis added).

Nothing in the Code requires that an ordinary automobile be equipped with marker lights. Although Code § 46.2-1017 requires "approved" marker lights on "the right and left front corners" of vehicles "exceeding seven feet in width," no evidence in this record suggests that Officer Cash could reasonably have believed that defendant's automobile exceeded such a width. Code § 46.2-1020, titled "Other permissible lights," may permit the use of some marker lights as "daytime running lights" or "side lights," but Code § 46.2-1020 contains no requirement that these "permissible" lights be approved. Therefore, defendant's marker lights were not lights "for which approval is required" under Code § 46.2-1002 and were not "unlawful" under Code § 46.2-1003 if "defective" or "unsafe."

Accordingly, the trial court properly ruled that the

non-functioning marker light, standing alone, did not give Officer Cash a basis for stopping defendant's automobile because the marker light was not required equipment.

### B.  SPEED

Implicit in the trial court's suppression of the evidence is that it rejected the Commonwealth's argument that defendant's speed provided a basis for the stop.  We cannot say it erred in doing so.  Officer Cash's testimony regarding speed was equivocal, and the trial court, as the finder of fact, was entitled to conclude that his testimony did not provide reasonable suspicion or probable cause for the stop.

### C.  TURN SIGNAL INDICATOR

The trial court also ruled the record contained "no evidence that the turn signal [required by the Code] did not work." Again, we cannot say the trial court erred in so ruling.

Turn signals which are located "on both front and rear" and "are of a type that has been approved by the Superintendent" are required equipment on all vehicles meeting the requirements of Code § 46.2-1038(B).[1]  Although subsection (C) provides that

---

[1] Code § 46.2-1038(B) makes it

> unlawful . . . to drive on any highway a motor vehicle registered in the Commonwealth and manufactured or assembled after January 1, 1955, unless such vehicle is equipped with [electrical] turn signals [which meet the requirements of this title and are of a type that has been approved by the Superintendent] on both front and rear.

The trial court implicitly found these conditions had been met.

- 8 -

the use of required turn signals is optional for most drivers--permitting the driver of an equipped car to use hand and arm signals pursuant to Code § 46.2-849 instead--Code § 46.2-1010 requires that "[e]very vehicle driven or moved on a highway within the Commonwealth shall at all times be equipped with such lights as are required in this chapter" and that "[t]he lights shall at all times be capable of being lighted, except as otherwise provided." Therefore, even if a driver chooses to use hand signals in lieu of electrical turn signals, all cars meeting the criteria of Code § 46.2-1038(B) must have operational turn indicators on the front and rear. In addition, because Code § 46.2-1038(B) requires that such turn signals be of an approved type, they fall under the provisions of Code §§ 46.2-1002 and 46.2-1003, which make it "unlawful for any person to use or have [them] as equipment on a motor vehicle operated on a highway" if they are "defective" or "unsafe." Accordingly, the existence of facts providing reasonable suspicion of a violation of either Code § 46.2-1010 or 46.2-1003 would validate Officer Cash's stop of appellant.

In this case, however, the trial court found "no evidence that the [front] turn signal [required by the statute] did not work." Officer Cash testified that the right front marker light and turn signal were the same light, which permitted the inference that the turn signal portion of the light also might not be working. However, the trial court was not required to

accept this testimony; and even if it did, no evidence in the record provided reasonable suspicion that this light also functioned as the front turn signal light required by the Code to be on defendant's vehicle. Therefore, no reasonable inference could be drawn that defendant's required right front signal light was not functioning. That the non-functioning marker light may have been designed to flash in unison with the required right turn signal light on the front of the vehicle did not transform the marker light into "required" equipment.

For these reasons, we hold the trial court did not err in granting defendant's motion to suppress. Therefore, we affirm the trial court's ruling.

Affirmed.

Fitzpatrick, C.J., dissenting.

Assuming the trial court correctly ruled the malfunctioning marker light did not justify the stop, the evidence provided reasonable suspicion that defendant drove in the range of forty miles per hour in a thirty-five mile-per-hour zone, permitting Officer Cash to stop defendant for speeding.[2]  That defendant's speeding was not Cash's <u>subjective</u> reason for stopping the car is not dispositive of the analysis of this issue, for the Fourth Amendment requires only that an objectively reasonable basis exist for an investigatory stop.  See, e.g., <u>Whren v. United States</u>, 517 U.S. 806, 812-13 (1996).  "'[T]hat the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, <u>viewed objectively</u>, justify that action.'"  <u>Id.</u> at 813 (quoting <u>Scott v. United States</u>, 436 U.S. 128, 138 (1978)) (emphasis added); <u>see also</u> <u>Ohio v. Robinette</u>, 519 U.S. 33, 38-39

---

[2]Cash testified as follows:

Q.  When you say he accelerated, how many miles per hour would you estimate that he accelerated his speed?
A.  I would estimate that it was in the range of 40 miles per hour.
Q.  That's how much he accelerated, 40 miles per hour, or he accelerated to . . . ?
A.  To 40 miles per hour.

*     *     *     *     *     *     *

Q.  What was the speed limit through there?
A.  It's 35 miles per hour . . . .

- 11 -

(1996); Limonja v. Commonwealth, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 479-80 (1989) (en banc).

For these reasons, I respectfully dissent and would hold that the trial court erred in granting defendant's motion to suppress and would reverse that ruling.